MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent, vs. RAILROAD COMMISSION OF WISCONSIN and another, Appellants.

*May 5—May 27, 1919.*

*Public utilities: Street railways: Railroad commission: Action to set aside order fixing rates: Findings of fact: Rate-making: Authority of court: Proceedings to fix: Reasonableness of rate: Evidence: Consideration of federal court proceedings: Consideration of purchase price of separate systems: Change of rate by railroad commission: Rescission: Legal rate.*

1. Under sec. 1797—16, Stats., providing that in actions to set aside an order of the railroad commission fixing rates the burden of proof shall be on the plaintiff to show that the order is unlawful or unreasonable, a general finding by the court that street railway fares fixed by the commission were unreasonable is sufficient; and sec. 2863 does not require findings of the fundamental facts upon which the ultimate conclusion of unreasonableness is based.

2. While an order of the railroad commission fixing street railway rates may be attacked in the courts as unreasonable, the power to fix future rates is not a judicial one.

3. Where the railroad commission, after making an order fixing street railway fares, thereafter rescinded the same in a new proceeding on the ground that the rate was then unreasonable, the court cannot, under secs. *1797—14 to 1797—16, in a pro-*ceeding in which the rate first fixed was attacked, treat the rescission by the railroad commission as having voided the rate *ab initio.* If that were permitted there would be no certainty as to when a legal rate was in force.

4. In an action to set aside an order of the railroad commission requiring a street railway company to sell tickets in packages of thirteen for fifty cents instead of six for twenty-five cents, the evidence is *held* to show that from the time the order was entered in August, 1912, the rate fixed was not reasonable.

5. A reasonable rate of street railway fares is a rate which yields a fair return on the value of property necessarily employed over and above expenses and depreciation; and a rate of seven and a half per cent. is a fair return.

6. When the state asserted and put into operation the power to fix rates and fares by means of a railroad commission, the commission was not bound in its estimate of value by the conclusion reached in an action previously brought in the federal court against a city in which the street railway company whose rates were involved was operated.

7. The railroad commission, in fixing rates charged by a street railway company, is not bound, in determining the capital of the company, to allow the amounts paid by it in purchasing separate systems of which its system was composed.

APPEALS from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This action was brought in the circuit court for Dane county in September, 1912, to set aside an order of the defendant *Commission* made August 23, 1912, requiring the plaintiff to sell street railway tickets in packages of thirteen for fifty cents, instead of six for twenty-five cents as theretofore. The claim then made by the plaintiff was that the order was void because it violated the terms of the city ordinances regulating fares, which ordinances were claimed to be contracts and hence not subject to change by subsequent legislation. This court held to the contrary upon the first

appeal in this case (153 Wis. 592, 142 N. W. 491), and the decision was affirmed by the supreme court of the United States (238 U. S. 174, 35 Sup. Ct. 820). The case then went back to the trial court and the complaint was amended so as to challenge the reasonableness of the *Railroad Commission's* order upon the merits, and a trial has been had. At the time of the commencement of the action in September, 1912, the trial court issued a temporary injunctional order suspending the operation of the *Commission's* order, but requiring as a condition that the plaintiff issue coupons for the additional tickets required to be issued by the order and give a bond to redeem the coupons so issued if the *Commission's* order should finally be held valid. This was done, and a large number of such coupons have been issued and depend for their value upon the outcome of this case.

Much testimony, both oral and written, was introduced upon the trial of the present case in addition to the testimony received by the *Commission* upon the original hearing, and among other things there was introduced the record of a proceeding instituted before the *Railroad Commission* in December, 1914, by one Chris Woehsner, mayor of the city of Cudahy, against the plaintiff and the Milwaukee Light, Heat & Traction Company, a closely allied corporation which operates suburban and interurban lines running out of Milwaukee in connection with the plaintiff's urban lines in Milwaukee, charging that the order of August 23, 1912, was unreasonable and asking for a modification thereof so as to provide that the earnings of the Milwaukee Light, Heat & Traction Company be considered in connection with those of the plaintiff company and that upon such combined earnings the plaintiff be awarded a fair and reasonable return. The record showed that on January 30, 1915, the *Railroad Commission* made a decision in this case (hereinafter called the Woehsner Case) and ordered that the order of August 23, 1912, directing sale of thirteen tickets for fifty cents, "is hereby rescinded." Other testimony introduced on the trial

will be referred to in the opinion.    At the close of the evidence the parties stipulated that the record need not be returned to the *Railroad Commission,* as required to be done by sub. (b), sec. 1797—16, Stats., unless the parties stipulate to the contrary.    The trial judge made a single finding of fact, to the effect that the order of August 23, 1912, requiring the sale of thirteen tickets for fifty cents is unreasonable, and directed judgment setting aside and abrogating the same and providing that the injunctional order be made permanent and that all coupons issued pursuant to the temporary injunctional order be canceled and declared of no force or effect.    From judgment entered in accordance with this order the city of *Milwaukee* and the *Railroad Commission* separately appeal.

.On the original argument, November 8, 1918, there was a brief for the appellant *Railroad Commission* by *Spencer Haven,* attorney general, and *Walter H. Bender,* deputy attorney general, and oral argument by *Mr. Bender.*

*Clifton Williams,* city attorney, for the appellant *City of Milwaukee.*

For the respondent there was a brief by *Miller, Mack & Fairchild* of Milwaukee, attorneys, and *Sullivan & Cromwell* of New York, of counsel, and oral argument by *Edwin S. Mack.*

On the second argument, May 5, 1919, there was a brief for the appellant *Railroad Commission* by *John J. Blaine,* attorney general, *M. B. Olbrich,* deputy attorney general, and *Walter H. Bender* of Milwaukee, special counsel; and the cause was argued orally by *Mr. Bender.*

*Clifton Williams,* city attorney, for the appellant *City of Milwaukee.*

For the respondent there were briefs by *Miller, Mack & Fairchild* of Milwaukee, attorneys, and *Sullivan & Cromwell* of New York, of counsel, and oral argument by *Mr. Clarke M. Rosecrantz* of New York and *Mr. Edwin S. Mack* of Milwaukee.

WINSLOW, C. J.. It is very vigorously claimed by both of the appellants that the single finding of fact made by the court to the effect that the order of August 23, 1912, "is unreasonable" is not a response to sec. 2863, Stats., which requires that upon trial of an issue of fact by the court the judge shall state in his decision "the facts found by him." It is argued that the court should under this provision make findings of the fundamental facts upon which the ultimate conclusion of unreasonableness is based, such as (1) the fair value of the property used by the plaintiff in its business, (2) the reasonable rate of return thereon, and perhaps other facts, such as the amount of the original investment, the cost of reproduction, the going value, the rate of depreciation, etc.

The argument is not without considerable weight, and it is beyond question that it would simplify the question arising on the appeal and make the work of this court easier if the fundamental facts, upon which the ultimate conclusion of unreasonableness is based, were stated. However we are unable to convince ourselves that such was the intention of the lawmaking power. This action is a purely statutory action, created by the railroad commission law for the sole purpose of providing a court review of an order of the *Commission* regulating railroad rates or service to determine whether the order is unlawful or unreasonable.

Sub. (e), sec. 1797—16, Stats., provides for the bringing of the action, and declares that "in all trials under this section" the burden of proof shall be upon the plaintiff "to show by clear and satisfactory evidence that the order of the commission complained of is unlawful, or unreasonable, as the case may be." The court is nowhere directed or empowered to find the lawful or reasonable rate; indeed the power to fix future rates is not a judicial power, though the power to determine whether existing rates are reasonable is judicial in its nature. *Madison v. Madison G. & E. Co.* 129 Wis. 249, 108 N. W. 65.

The court must be convinced that the rate fixed in the order is unlawful or unreasonable, but it is neither required nor expected to find what rate would be reasonable. The fact to be found is a single negative fact, not a number of affirmative facts. We think, therefore, that the single finding of unreasonableness in the present case satisfies the calls of the statute.

The next claim made by the appellants is that the trial judge based his decision, not upon the evidence before him, but upon the supposed fact that the order in the Woehsner Case rescinded the order of August 23, 1912, *ab initio,* and thus deprived the last-named order of the statutory presumption of reasonableness.

That the trial judge did this very thing cannot be doubted. In a written opinion filed he said:

"The order directing the sale of thirteen tickets for fifty cents was based upon the *Commission's* forecast of the future. The order in the Woehsner Case was based upon actual results of operation under the order. The finding of the *Commission* that the order directing the sale of thirteen tickets for fifty cents was unreasonable and that it "would not have been made" if the *Commission* had understood the nature of the changes then in progress in connection with plaintiff's business, is *'prima facie* lawful and . . . reasonable.' Sec. 1797—15, Stats. That finding must stand until it is shown 'by clear and satisfactory evidence' that it is 'unreasonable or unlawful.' Sub. (e), sec. 1797—16, Stats. If upon the record the order in the Woehsner Case is such that 'reasonable men might well differ with respect to its correctness, (it) cannot be said to be unreasonable.' *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 165, 116 N. W. 905.

"If the court cannot say that the order in the Woehsner Case is unreasonable, then the finding of the *Commission* in that case takes from the order here in question the statutory presumption of reasonableness. That presumption is based on the sanction which a finding of the *Commission* gives to it. When that sanction is taken away by the action of the *Commission* in vacating its former order and determining that such order is unreasonable, the former order is no longer

supported by such statutory presumption. It is manifest that the court cannot sustain both orders of the *Commission*. If the statutory presumption in favor of the order in the Woehsner Case is not overcome by clear and satisfactory evidence, the order in the Fare Case must be held to be unreasonable, as the *Commission* has found it to be."

The judge then takes up the question whether the evidence shows that the findings in the Woehsner Case are unreasonable and concludes that it does not. On this line of reasoning the conclusion necessarily followed that the order in the Woehsner Case wiped out the order of August 23, 1912 (called the order in the Fare Case), and left the court nothing to do but to declare it unreasonable and set it aside.

To our minds this is an erroneous interpretation of the statute. Both orders may be upheld and both undoubtedly have the statutory presumption of reasonableness. The scheme of the statute is that when the *Commission* in a proper proceeding makes an order regulating fares, that order conclusively determines the lawful and reasonable rate at the time the order is made, except that it may be reviewed by action brought within ninety days, as the present action was brought.

It is not provided or contemplated that the order may be reviewed in another and different proceeding before the *Commission,* that is, reviewed as to its reasonableness *at the time it was made.* Of course upon complaint made at any time to the *Commission* the subject of the present reasonableness of the rates may be examined and new rates fixed, but this does not mean that the previous order is to be declared void *ab initio.* Up to the time the new order is made the rates fixed by the original order are lawful and the making of the new order simply substitutes another rate as the lawful one from that time onward. This seems to us so clear from a study of the statute (secs. 1797—14 to 1797—16, inclusive) that we shall spend no further time upon the proposition.

The provision that the *Commission* may "rescind" an or-

der fixing rates previously made by it is manifestly not to be construed as retroactive, that is, that the previous order is to be made void from the beginning. The word "rescind" may have such a meaning, but its more frequent meaning is, to presently nullify, repeal, or vacate. To give it the retroactive meaning contended for would mean that neither carrier nor patron would ever know whether rates were legal or not. A rate supposed by both parties to be legal one year might be discovered to be illegal the next year, with the resulting consequences of liabilities for amounts overpaid or deficiencies in payment, which again would be liable to be upset in the following year.

The question before the circuit court was whether the evidence before it clearly and satisfactorily showed that the order of August 23, 1912, was unlawful because unreasonable when made. It would doubtless be entirely competent for this court to send the case back to the circuit court to pass upon this question specifically before passing upon it here; but this case has been pending many years and it seems that public and private interests require that there should be as speedy an end of this litigation as possible, and, as the evidence is all before us, we have concluded to examine it and ascertain whether it justifies the conclusion that the order in question was unreasonable when made. It may be remarked in passing that if it fixed an unreasonably low fare it was unlawful because the fare must be a reasonable fare.

This examination convinces us that it is not shown by clear and satisfactory evidence that the order of August 23, 1912, was unlawful or unreasonable when made. A reasonable rate is a rate which yields a fair return on the value of the property necessarily employed over and above expenses and depreciation, and a return of seven and one-half per cent. has been approved by this court. *Duluth St. R. Co. v. Railroad Comm.* 161 Wis. 245, 152 N. W. 887.

Reference to the report of the proceeding which culminated in the order in question here (found in 10 Wis. R. R.

Comm. Rep. 1–305) will show that the *Commission* then figured the company's total investment in 1911 to be $10,900,889 and its surplus of income for that year to be $1,436,847.61, making an excess of $619,280.94 over and above a seven and one-half per cent. return upon the investment (p. 243). From this surplus the *Commission* calculated that there should be deducted a sum not exceeding $416,469 for wage increases, extension of single-fare privileges, and various other losses and increased expenses likely to follow in the near future (p. 247), leaving a net probable surplus for 1912 over and above the seven and one-half per cent. return on the investment of more than $200,000. They then calculated that the reduction of revenue resulting from the sale of thirteen tickets for fifty cents, instead of twenty-five tickets for $1 as theretofore, would amount to $171,784, which being deducted from the net surplus would still leave the seven and one-half per cent. return on the investment intact.

The respondent company very vigorously claims that the investment valuation should have been very largely increased. Any detailed or exhaustive treatment of this subject would involve many pages of discussion of facts and tabulation of figures. The subject was treated very thoroughly by the *Commission* in its report of the case, covering more than 300 pages, and we shall content ourselves here with saying that the conclusions of the *Commission* in this respect were founded on ample evidence and cannot now be set aside. The claim that the *Commission* was bound in its estimate of value by the conclusions reached in the action brought in the federal court in 1898 by the plaintiff against the city of *Milwaukee* to declare an ordinance fixing fares confiscatory (87 Fed. 577) cannot be entertained.

When the state asserted and put into operation its power to fix rates and fares by means of the *Railroad Commission* it manifestly started with a clean sheet and was not hampered by the results of any previous litigation between the

company and the city.    Nor was the *Commission* bound to allow amounts paid by the plaintiff in purchasing the five separate railways of which the plaintiff's system is composed.    Such amounts do not necessarily represent fair or actual values.

It appears by the evidence that in the summer of 1913 the *Railroad Commission* of its own motion instituted and conducted an investigation with reference to the service on the plaintiff's city lines, which will be found reported in vol. 13 Wis. R. R. Comm. Rep. pp. 178–245.    In their report of this case, at page 239, will be found tables showing the earnings and operating expenses of the plaintiff during the years 1912 and 1913.    From these tables it appears that they figured the fair value of the property in 1912 at $11,600,000, upon which there was a surplus of earnings, after payment of expenses, of $1,304,798.54, being an excess of $434,798.54 over and above seven and one-half per cent. return on the value; and that in 1913, on a valuation of $12,000,000, the excess over and above the seven and one-half per cent. was $297,803.60. In this case the *Commission* say (p. 240): "It is difficult to see in what respects the *Commission* went further in the Fare Case than was its plain duty under the circumstances." More than a year later the Woehsner Case (15 Wis. R. R. Comm. Rep. 724–751) came before the *Commission,* and at this time there came to the attention of that body a number of new facts.    It is said in this case (p. 734), "the *Commission* still believes that under the existing conditions and the knowledge at hand up to December 31, 1911, the above rate [*i. e.* the rate fixed by the order of August 23, 1912] was fair to the contending parties."

The *Commission* then proceeds to state the factors which have contributed to the changed conditions which "exist at the present writing" and which in their judgment call for abrogation of the order of 1912.    The most significant of these is the additions to the physical property, which during the years from January 1, 1911, to January 1, 1914,

amounted to $4,512,818, or an increase of forty-three per cent., during which time the gross revenues remained practically stationary at a little more than $4,000,000, in fact showing a slight falling off in 1914 from the previous year. Of these additions about $1,000,000 was expended in 1912 and nearly $1,600,000 in 1913.    Other factors noted by the *Commission* were (1) the increased demands of the city for paving between the tracks, which were $91,611 in 1912 and rose to $358,758 in 1913; (2) the higher relative cost of maintenance of property; (3) the increase in wages of labor, expense of supervision, and overhead charges; (4) the more extended use of transfers by reason of the opening of cross-town lines, causing an estimated loss in revenues for the year 1914 alone of $80,000; (5) the depressing effect of the extensive use of automobiles, causing an estimated loss in revenue in 1914 of somewhere from $122,500 to $245,000; and finally the effect of the order of August 23, 1912, itself.

We shall not attempt to discuss these factors in detail nor do we here intimate that they were sufficient to justify the *Commission* abrogating the order just referred to at any time.    It appears that in 1918, in a proceeding brought before the *Railroad Commission* by the plaintiff here, an order was made still futher raising the fares on the plaintiff's lines by ordering the discontinuance of the sale of tickets at the rate of six for twenty-five cents, and the validity of this order has been challenged in an action which is now in this court on appeal and soon to be heard.

It is sufficient now to observe that the evidence does not make it clear that the order of August 23, 1912, was in any respect unreasonable when made.    The conditions then existing appear to have quite fully justified the making of the order.    The factors which are claimed to have made the rate of fare then fixed unreasonable are changed conditions which came in after the making of that order, principally during the years 1913 and 1914.    Whatever may have been the effect of the changed conditions on the question of the

present reasonableness of the order, they do not establish the fact that it was unreasonable when made.

*By the Court.*—Judgment reversed, and action remanded with directions to affirm the order of the *Railroad Commission,* with costs in favor of the city to be taxed against the plaintiff.

OWEN, J., took no part.