## WISCONSIN HOUSING & ECONOMIC DEVELOP-MENT AUTHORITY, Plaintiff-Respondent,

v.

## VEREX ASSURANCE, INC., a Wisconsin insurance corporation, Defendant-Substituted-Plaintiff-Appellant,†

## IDL MORTGAGE CORPORATION, Defendant-Third Party Plaintiff,

v.

Doris SMITH, Marlene Ramsey, Crown Realty Co., Inc., Milton Dizack, Andrew Mosby, Lillie Maye Mosby, Lillie Hayes, Century 21 Cambridge Realty, Inc., Gerry Kopps, Emil Harder, Thomas Brainard, David B. Beving, and Rosie V. Nonn, f/k/a Rosie Beving, Third Party Defendants.

Court of Appeals

*No. 89-0754. Oral argument January 10, 1990.—Decided November 1, 1990.*

(Also reported in 464 N.W.2d 10.)

† Petition to review granted.

57

For the defendant-substituted plaintiff-appellant the cause was submitted on the brief of *Daniel W. Hildebrand* and *Joseph A. Ranney* of *Ross & Stevens, S.C.* of Madison, and oral argument by *Daniel W. Hildebrand.*

For the plaintiff-respondent the cause was submitted on the brief of *Jon P. Axelrod, Margaret A. Satterthwaite* and *William D. Mollway* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison, and oral argument by *Jon P. Axelrod.*

Before Eich, C.J., Gartzke, P.J. and Dykman, J.

DYKMAN, J. Verex Assurance, Inc. (Verex) appeals from a judgment declaring that Verex cannot rescind an insurance policy insuring the Wisconsin Housing and Economic Development Authority (WHEDA) because of alleged misrepresentations in the application process. We conclude that sec. 631.36, Stats., regulates both cancellations and rescissions and therefore affirm.

## BACKGROUND

WHEDA administers the "Home Program," which enables low-income residents to secure low interest mortgage loans. WHEDA purchased the mortgage loan at issue, made by M&I Grootemaat Mortgage Corporation (M&I) to Maria Carrasco on November 28, 1984. Verex issued a primary mortgage insurance policy to M&I covering the Carrasco loan. WHEDA also obtained a mortgage pool insurance policy from Verex, insuring losses not covered by the primary policies. Both the primary and pool coverage by Verex were effective upon closing.

In May of 1985, WHEDA issued a notice of non-monetary default to Carrasco, for failing to occupy the premises. WHEDA notified Verex of the default. WHEDA later obtained a judgment of foreclosure against Carrasco.

WHEDA filed a claim with Verex, requesting payment under both policies. On October 31, 1986, Verex notified M&I that it suspected Carrasco had made three misrepresentations in connection with the application for the loan, regarding the down payment, original appraisal and Carrasco's intent to occupy the premises. In March of 1987, Verex tendered to M&I the premium paid under the primary policy on the Carrasco loan, stating that it was rescinding that policy on the ground of misrepresentation.

Verex did not attempt to terminate coverage under the pool policy. However, Verex denied WHEDA's claim under the pool policy as well, contending that M&I was WHEDA's agent and therefore M&I's misrepresentations should be imputed to WHEDA for the purposes of rescinding under the pool policy.

The trial court concluded that, in order to terminate an insurance contract by any means, the insurer must comply with sec. 631.36, Stats.[1] Because Verex did not do so, the trial court found that its attempt to terminate coverage was ineffective. Verex appeals.

---

[1]The trial court also concluded that: (1) Verex waived its right to rescind because it failed to reserve that right in the policy; (2) Verex agreed it would not rescind coverage of either the primary insurance policy or the pool insurance policy; (3) Verex did not provide timely notice to WHEDA of its knowledge of the misrepresentations as required by sec. 631.11(4), Stats; and (4) there was no material misrepresentation by M&I. In light of our disposition of this case, we need not reach these issues.

## STANDARD OF REVIEW

██

The issue on review is whether the terms of sec. 631.36, Stats., govern rescission. The application of a statute to a set of facts involves a question of law. *Behnke v. Behnke,* 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981). Thus, we review the question *de novo. Polan v. Dep't. of Revenue,* 147 Wis. 2d 648, 655, 433 N.W.2d 640, 643 (Ct. App. 1988).

## SECTION 631.36, STATS.

Section 631.36, Stats., provides, in part:

**(1)** **Scope of Application.** (a) *General.* Except as otherwise provided in this section or in other statutes or by rule under par. (c), this section applies to all contracts of insurance based on forms which are subject to filing and approval under s. 631.20(1).

. . ..

(e) *Construction.* Nothing in this section prevents the rescission or reformation of any life or disability insurance contract not otherwise denied by the terms of the contract or by any other statute.

**(2)** **Midterm Cancellation.** (a) *Permissible Grounds.* Except as provided by par. (c) . . . no insurance policy may be canceled by the insurer prior to the expiration of the agreed term <u>or one year from the effective date of the policy or renewal, whichever is less,</u> except for failure to pay a premium when due or on grounds stated in the policy, which must be comprehended within one of the following classes:

1. Material misrepresentation;

2. Substantial change in the risk assumed; except to the extent that the insurer should reasona-

bly have foreseen the change or contemplated the risk in writing the contract;

3. Substantial breaches of contractual duties, conditions or warranties; or

4. Attainment of the age specified as the terminal age for coverage . . ..

(b) *Notice.* No cancellation under par. (a) is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder.

(c) *New policies.* Pars. (a) and (b) do not apply to any insurance policy that has not been previously renewed if the policy has been in effect less than 60 days at the time the notice of cancellation is mailed or delivered. No cancellation under this paragraph is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder. Subs. (6) and (7) do not apply to such a policy.

**(3) Anniversary cancellation.** A policy may be issued for a term longer than one year or for an indefinite term with a clause providing for cancellation by the insurer by giving notice 60 days prior to any anniversary date, as provided in sub. (4)(a) for nonrenewals. (Emphasis supplied.)[2]

---

[2]Section 631.36, Stats., was amended by 1989 Wis. Act 332 to delete the above underlined portion of sub. (2)(a) and amend sub. (3) to read, in part:

**(3) Anniversary Cancellation or Alternation.** A policy may be issued for a term longer than one year or for an indefinite term with a clause providing for cancellation by the insurer in the manner provided in sub. (4)(a) for nonrenewals, except the notice must be given at least 60 days prior to any anniversary date . . ..

Secs. 15 and 16, 1989 Wis. Act 332. The amendments are applicable to insurance contracts issued or renewed after December 1, 1990. Secs. 33 and 34, 1989 Wis. Act 332. The amendments are

Verex contends that sec. 631.36, Stats., was intended by the legislature to regulate only cancellation. They assert that sec. 631.36 left untouched the common law remedy of rescission.

The cardinal rule in all statutory interpretation is to discern the intent of the legislature. *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 226, 453 N.W.2d 856, 867 (1990). The primary source of statutory interpretation is the language of the statute itself. *Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis. 2d 323, 332, 377 N.W.2d 151, 155 (1985).

If a statute is plain and unambiguous, a court must apply its plain meaning, without resort to rules of construction. *Boles v. Milwaukee County,* 150 Wis. 2d 801, 813, 443 N.W.2d 679, 683 (Ct. App. 1989). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Sonnenburg v. Grohskopf,* 144 Wis. 2d 62, 65, 422 N.W.2d 925, 926 (Ct. App. 1988).

"Cancellation" is not defined in sec. 631.36, Stats. It is thus unclear whether the legislature intended this term to include rescission. However, sec. 631.36(1)(e) provides that "[n]othing in this section prevents the *rescission* or reformation of any life or disability insurance contract not otherwise denied by the term of the contract or by any other statute." (Emphasis added.)

We conclude reasonable persons could arrive at different understandings as to whether sec. 631.36, Stats., encompasses rescission.[3] The statute is ambiguous. We

inapplicable to the present case and we do not examine what effect, if any, the amendments have on sec. 631.36.

[3]We reject the proposition that because of the distinct meanings assigned cancellation versus rescission in insurance parlance, the legislature's use of only one of the terms indicates its intent

therefore turn to extrinsic aids such as the "scope, history, context, subject matter and object of the statute" to discern legislative intent. *Schinner v. Schinner,* 143 Wis. 2d 81, 89, 420 N.W.2d 381, 384 (Ct. App. 1988).

Section 631.36, Stats., was enacted in 1969. Sec. 24, ch. 144, Laws of 1969. The "Preliminary Comment" accompanying sec. 631.36 as enacted discusses the object of the statute. *Id.* The Comment states, in part:

> Chapter 631 will deal with insurance contracts generally. This particular section, however, is designated to deal more broadly with some of the problems that have arisen from cancellation and nonrenewal of policies.
>
> . . ..
>
> For the average individual who purchases property or liability insurance, much of the value of his insurance lies in the fact that he may rely on the security of his property to insulate his savings from disasters beyond his control and give him some peace of mind. If an insurer may cancel a policy at mid-term without

---

not to regulate the other. Verex relies on *Gov't Employees Ins. Co. v. Chavis,* 176 S.E.2d 131, 135 (S.C. 1970), where the court said "cancellation of a liability insurance policy operates prospectively and is to be distinguished from rescission which destroys the policy *ab initio.*" *See also* 17 G. Couch, *Couch on Insurance 2d* sec. 67:35 (2d ed. 1983). However, dictionary definitions indicate the difference between the two terms, as commonly used, is slight. *Webster's Third New International Dictionary,* defines "cancel," in part, as "1: CANCELLATION: the act of annulling or *rescinding.*" (Emphasis added.) The word "rescind" is, in part, defined in the same dictionary, as "2 a: to take back: ANNUL, CANCEL." *See also* 12A C.J.S. *Cancellation of Instruments; Rescission,* sec. 2 (1980) (authors of article concluding that "the terms 'cancellation' and 'rescission' are frequently regarded as being interchangeable.") (footnote omitted).

justification, or may decline to renew without sufficient notice, these values are undermined.

. . ..

The problems of preparing an adequate statute dealing with termination of insurance contracts are many: they include the truly chaotic underlying common law on the subject of contract termination and renewal . . ..

. . ..

It seems desirable, despite complexity and variety of practice, to deal with the subject as broadly as possible rather than attempt to build a crazy-quilt of laws to accommodate a crazy-quilt of practices.

*Id.*

A construction that will fulfill the purpose of the statute is favored over a construction that defeats its manifest object. *Terry v. Mongin Ins. Agency,* 105 Wis. 2d 575, 583–84, 314 N.W.2d 349, 353 (1982). Section 631.36, Stats., is structured to allow an insurer to cancel for any reason during the first sixty days of the policy, with ten days notice. Sec. 631.36(2)(c). In addition, an insurer may cancel for the following grounds, if stated in the policy: (1) material misrepresentation; (2) substantial change in the risk assumed; (3) substantial breaches of contractual duties, conditions or warranties; or (4) attainment of a specific age. Sec. 631.36(2)(a). Finally, an insurer may cancel a policy issued for a term longer than a year or an indefinite term on its anniversary date, provided the policy contains an anniversary date cancellation clause and notice is given. Sec. 631.36(3).

Verex contends that this statute does not provide an exclusive listing of the methods by which an insurer may terminate coverage. Rather, Verex argues, it only gov-

erns when an insurer may *cancel* the insurance contract. Thus, Verex maintains, it may still terminate the insurance contract under the common law doctrine of rescission.[4]

Adoption of Verex's position would, in practical terms, negate the two pervasive objects of sec. 631.36, Stats.: (1) providing comprehensive regulation of the "crazy-quilt" of methods for terminating insurance contracts, and (2) providing assurances of security to purchasers of insurance. Because the grounds for cancellation of an insurance contract listed in sec. 631.36(2)(a) essentially mirror the grounds for rescission available under the common law,[5] both the notice and reservation

---

[4]A number of courts have concluded that the common-law right of rescission *does not* survive the passage of a statute prohibiting cancellation. *See Metropolitan Property & Liab. Ins. Co. v. Pennsylvania Ins. Comm'r.,* 509 A.2d 1346, 1349 (Pa. Commw. Ct. 1986) ("[h]ad the General Assembly also wanted to provide a remedy in rescission, they surely would have done so"), *aff'd,* 535 A.2d 588 (Pa. 1987); *Teeter v. Allstate Ins. Co.,* 192 N.Y.S.2d 610, 613–15 (N.Y. App. Div. 1959) (statute regulating cancellation and renewal was "the sole and exclusive method by which insurance coverage . . . [could] be terminated"), *aff'd,* 173 N.E.2d 47 (N.Y. 1961); *see also Aetna Casualty and Sur. Co. v. O'Conner,* 170 N.E.2d 681, 683 (N.Y. 1960).

Other courts, however, have found that rescission is not precluded by such statutes. *See Glockel v. State Farm Mut. Auto. Ins. Co.,* 400 N.W.2d 250, 256 (Neb. 1987) ("[r]ecognizing the distinctions between the remedies, it cannot be said that a statute controlling the methods of and reasons for cancellation or termination of an automobile liability policy precludes rescission."); *see also Auto-Owners Ins. Co. v. Michigan Comm'rs. of Ins.,* 369 N.W.2d 896, 898 (Mich. Ct. App. 1985); *Gov't Employees Ins. Co. v. Chavis,* 176 S.E.2d 131, 135 (S.C. 1970).

[5]Grounds for rescission include "[i]f a policy has been obtained by fraud, misrepresentation . . . mistake [or] . . .

66

of rights provisions of sec. 631.36 would, under Verex's interpretation, be surplusage. When faced with the option of giving ten days notice under sec. 631.36(2)(b) or immediately rescinding the insurance contract *ab initio,* we believe the insurer would almost always opt to rescind. Likewise, it is doubtful insurers would feel any compulsion to reserve their rights in a policy under sec. 631.36(2)(a).

Thus, under Verex's interpretation, the common law of rescission rather than the statutory scheme of sec. 631.36 would most frequently be used. This result would hardly fulfill the object of regulating "the subject as broadly as possible rather than attempt to build a crazy-quilt of laws . . .."

In addition, sec. 631.36(1)(e), Stats., itself provides that the section does not prevent "rescission . . . of any life or disability insurance contract not otherwise denied by the terms of the contract or by any other statute." The trial court correctly observed that, if the statute was *not* intended to regulate rescission, this language would be superfluous and render sec. 631.36(1)(e) meaningless. Statutes should be construed to avoid such interpretations. *Liles v. Employers Mut. Ins.,* 126 Wis. 2d 492, 503, 377 N.W.2d 214, 220 (Ct. App. 1985).

Verex contends that, if sec. 631.36, Stats., is construed to included rescission, insurers would be stripped of "the ability to protect themselves from fraudulent conduct" and that such a construction would constitute "an open invitation for persons to practice fraud upon insurers." We disagree.

Interpreting a similar statute, one court recently observed that the insurers "have it well within their

breach of contract." 17 G. Couch, *Couch on Insurance 2d* sec. 67:322 (2d. ed. 1983).

power to halt the chaos which they fear." *Metropolitan Property & Liab. Ins. Co. v. Pennsylvania Ins. Comm'r.,* 535 A.2d 588, 593 (Pa. 1987). During the first sixty days of the policy, insurers may terminate coverage for any reason with ten days notice. *See* 631.36(2)(c), Stats. If proper notice is given and rights reserved, insurers may also terminate coverage on the anniversary date of the policy, sec. 631.36(3), or for any of the grounds enumerated in sec. 631.36(2)(a), including fraud. *See* sec. 631.36(2)(a)1. In addition, there is no requirement that an insurer accept an applicant's answers at face value and offer immediate coverage. *See Metropolitan,* 535 A.2d at 593. Rather, insurers have ample opportunity both prior to and within the initial sixty days of extending coverage to investigate the veracity of the information provided by applicants.

The effective date of coverage under both WHEDA's pool insurance policy and M&I's primary insurance policy was November 28, 1984. Verex did not cancel coverage under either policy during the first sixty days of coverage. Nor did it reserve the right, under the pool policy, to cancel for any of the grounds enumerated in sec. 631.36(2)(a), Stats., or on the policy's anniversary date, pursuant to sec. 631.36(3).

In addition, Verex failed to comply with any of the notice provisions of section 631.36 necessary to terminate coverage under either the pool or primary policies. As such, Verex was precluded from terminating either policy.

*By the Court.*—Judgment affirmed.