WISCONSIN HOUSING & ECONOMIC DEVELOP-
MENT AUTHORITY, Plaintiff-Respondent,

v.

VEREX ASSURANCE, INC., a Wisconsin insurance
corporation, Defendant-Substituted-Plaintiff-Appel-
lant-Petitioner,

IDL MORTGAGE CORPORATION, Defendant-Third
Party Plaintiff,

v.

Doris SMITH, Marlene Ramsey, Crown Realty Com-
pany, Inc., Milton Dizack, Andrew Mosby, Lillie Mae
Mosby, Lillie Hayes, Century 21 Cambridge Realty,
Inc., Gerry Kopps, Emil Harder, Thomas Brainard,
David B. Beving and Rosie V. Nonn, f/k/a Rosie Bev-
ing, Third Party Defendants.

Supreme Court

*No. 89–0754. Oral argument January 2, 1992.—Decided March
4, 1992.*

(Also reported in 480 N.W.2d 490.)

637

For the defendant-substituted-plaintiff-appellant-petitioner there were briefs by *Daniel W. Hildebrand, Joseph A. Ranney* and *Ross & Stevens, S.C.,* Madison and oral argument by *Mr. Hildebrand.*

For the plaintiff-respondent there was a brief by *Jon P. Axelrod, Margaret A. Satterthwaite, William D. Mollway* and *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* Madison and oral argument by *Mr. Axelrod.*

Amicus Curiae brief was filed by *Kevin D. King,* Madison for Wisconsin Realtors Association and Wisconsin League of Financial Institutions, Limited.

Amicus Curiae brief was filed by *Claude J. Covelli, Bonnie A. Wendorff* and *Boardman, Suhr, Curry &*

*Field,* Madison for Wisconsin Insurance Alliance and Wisconsin Association of Life and Health Insurers.

LOUIS J. CECI, J. This case is before the court on petition for review of a published decision of the court of appeals, *WHEDA v. Verex Assurance,* 159 Wis. 2d 57, 464 N.W.2d 10 (Ct. App. 1990). The court of appeals affirmed a decision of the circuit court for Dane County, Jack Aulik, Circuit Judge. The court of appeals held that sec. 631.36, Stats. 1987–88,[1] prohibited Verex Assurance, Inc. (Verex) from rescinding, due to alleged

---

[1]Section 631.36, Stats. 1987–88, provides in relevant part:

**631.36 Termination of insurance contracts by insurers. (1)** Scope of Application. (a) *General.* Except as otherwise provided in this section or in other statutes or by rule under par. (c), this section applies to all contracts of insurance based on forms which are subject to filing and approval under s. 631.20(1).

. . ..

(d) *Other rights.* The rights provided by this section are in addition to and do not prejudice any other rights the policyholder may have at common law or under other statutes.

(e) *Construction.* Nothing in this section prevents the rescission or reformation of any life or disability insurance contract not otherwise denied by the terms of the contract or by any other statute.

**(2)** Midterm Cancellation. (a) *Permissible grounds.* Except as provided by par. (c) and sub. (3) and s. 655.24(2)(b), no insurance policy may be canceled by the insurer prior to the expiration of the agreed term or one year from the effective date of the policy or renewal, whichever is less, except for failure to pay a premium when due or on grounds stated in the policy, which must be comprehended within one of the following classes:

1. Material misrepresentation;

2. Substantial change in the risk assumed, except to the extent that the insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;

3. Substantial breaches of contractual duties, conditions or warranties; or

4. Attainment of the age specified as the terminal age for coverage . . ..

(b) *Notice.* No cancellation under par. (a) is effective until at

misrepresentations in the application process, a policy of mortgage insurance insuring the Wisconsin Housing and Economic Development Authority (WHEDA). Because we find that sec. 631.36 governs both rescissions and cancellations of insurance contracts, we affirm.

The facts are not in dispute. WHEDA purchased a mortgage loan that the lender M&I Grootemaat Mortgage Corporation (M&I) had made on November 28, 1984, to Maria Carrasco. The loan was insured by both a primary mortgage guaranty insurance policy obtained by M&I and by a pool mortgage guaranty insurance policy obtained by WHEDA. Both the primary and pool policies were obtained through Verex.

> least 10 days after the 1st class mailing or delivery of a written notice to the policyholder.
>
> (c) *New policies.* Paragraphs (a) and (b) do not apply to any insurance policy that has not been previously renewed if the policy has been in effect less than 60 days at the time the notice of cancellation is mailed or delivered. No cancellation under this paragraph is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder. . . .
>
> (3) Anniversary Cancellation. A policy may be issued for a term longer than one year or for an indefinite term with a clause providing for cancellation by the insurer by giving notice 60 days prior to any anniversary date . . ..

Section 631.36, Stats., was amended by 1989 Wis. Act 332. The amendment deleted the above underlined portion of sub. (2)(a) and revised sub. (3) to read, in part:

> (3) Anniversary Cancellation or Alteration. A policy may be issued for a term longer than one year or for an indefinite term with a clause providing for cancellation by the insurer in the manner provided in sub. (4)(a) for nonrenewals, except the notice must be given at least 60 days prior to any anniversary date . . ..

1989 Wis. Act 332, secs. 15 and 16. The amendments are inapplicable to the present case, and we do not examine what effect, if any, the amendments have on sec. 631.36.

Ms. Carrasco subsequently defaulted on the loan, and on May 21, 1985, WHEDA accelerated the loan. WHEDA notified Verex of the default on May 22, 1985. WHEDA obtained a foreclosure judgment against Ms. Carrasco in May, 1986, and filed its claim on the loan with Verex on May 13, 1986.

On October 31, 1986, Verex informed M&I that material misrepresentations had been made in the Carrasco loan application and that a legal basis existed to rescind coverage as to the loan. On March 5, 1987, Verex returned M&I's premium paid under the primary policy on the Carrasco loan, stating that it was rescinding the coverage on the grounds of misrepresentation.

Although Verex never attempted to rescind coverage under the pool policy, Verex rejected WHEDA's claim under that policy. Verex asserted that M&I was an agent of WHEDA, and, therefore, M&I's misrepresentations should be imputed to WHEDA for the purposes of rescinding the pool policy.

WHEDA brought suit, asserting that Verex was barred by sec. 631.36, Stats., from rescinding coverage under both the primary and pool policies. After a bench trial, the circuit court decided that sec. 631.36 prohibited retroactive cancellations of mortgage insurance policies, including rescissions, and that Verex was barred by sec. 631.36 from canceling coverage under either policy. The circuit court therefore ordered Verex to pay WHEDA for the Carrasco claims. The court of appeals affirmed.

██ The issue presented by this case, whether sec. 631.36 bars an insurer from exercising its common law right to rescind coverage of a mortgage loan, is a matter of statutory interpretation. Statutory interpretation is a question of law which we review without deference to the

decisions of the lower courts. *Pulsfus Farms v. Town of Leeds,* 149 Wis. 2d 797, 803–04, 440 N.W.2d 329 (1989).

Verex urges us to find that sec. 631.36, Stats., does not prohibit a mortgage insurer from exercising its common law right of rescission. Verex argues that sec. 631.36 governs only cancellation of insurance contracts and not rescission *ab initio.*[2] We do not agree.

The primary purpose of statutory construction is to determine the legislature's intent. *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 226, 453 N.W.2d 856 (1990). We first look to the plain meaning of the statute for guidance with respect to the legislature's intent. *Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis. 2d 323, 332, 377 N.W.2d 151 (1985).

By its own terms, sec. 631.36, Stats., covers "all contracts of insurance." Section 631.36(1)(a). The statute provides that the rights provided thereunder are "in addition to and do not prejudice any other rights the *policyholder* may have at common law or under other statutes." Section 631.36(1)(b) (emphasis added). The statute therefore reserves all common law rights of policyholders. Verex urges us to find that the statute does not abrogate an insurer's common law right of rescission, but the statute makes no reservation of insurers' common law rights.

Instead, sec. 631.36 specifically mentions rescission, as it states: "Nothing in this section prevents the rescission or reformation of any life or disability insurance contract not otherwise denied by the terms of the con-

---

[2]The parties have used the words "rescission *ab initio*" and "rescission" interchangeably. Because we can find no difference in the meaning of either expression, we have done the same.

tract or by any other statute." Section 631.36(1)(e). A reasonable interpretation of this statute is that it prevents an insurer from either canceling or rescinding all types of insurance, other than life or disability, except in a manner consistent with the statute. To interpret sec. 631.36 otherwise would render sec. 631.36(1)(e) superfluous. Such a construction should be avoided. *State v. Sher*, 149 Wis. 2d 1, 9, 437 N.W.2d 878 (1989). In addition, the "enumeration of exceptions in a statute creates a strong inference that the legislature intended no others." 3A Sutherland, *Statutory Construction* sec. 70.05 (Supp. 1991). As mortgage insurance is not one of the exceptions enumerated in sec. 631.36(1)(e), we infer that the legislature did not intend mortgage insurers to retain a common law right of rescission.

One of the five permissible grounds for midterm cancellation given in sec. 631.36(2)(a), Stats., is material misrepresentation, *see* sec. 631.36(2)(a)1. At oral argument, counsel could not give us any examples of material misrepresentations that could occur midterm. As material misrepresentations can only occur at the inception of the contract, the legislature must have intended to include rescission within sec. 631.36. To interpret sec. 631.36 as still allowing insurers the common law right to rescind would be to render sub. (2)(a)1 superfluous. Once again, we decline such a construction.

Furthermore, as the court of appeals noted, the grounds available for midterm cancellation listed in sub. (2)(a) generally mirror the grounds that were available to insurers under common law for contract rescission. *WHEDA*, 159 Wis. 2d at 66 and n.5. This also lends support to the proposition that the legislature meant to

regulate both rescissions and cancellations of insurance policies.

The "Preliminary Comment" to sec. 631.36, Stats., further persuades us that sec. 631.36 was intended to regulate both rescissions and cancellations. The Comment states, in part:

Chapter 631 will deal with insurance contracts generally. This particular section, however, is designated to deal more broadly with some of the problems that have arisen from cancellation and nonrenewal of policies. . . .

This legislation should give better assurance that a policyholder will get a product on which he can rely despite the wish of an insurer to cancel the policy during its term. . . . For the average individual who purchases property or liability insurance, much of the value of his insurance lies in the fact that he may rely on the security of his property to insulate his savings from disasters beyond his control and give him some peace of mind. If an insurer may cancel a policy at mid-term without justification, or may decline to renew without sufficient notice, these values are undermined.

. . ..

There is little disagreement about the objectives of this section, which seeks only to ensure for *all* policyholders the fair treatment in contract relationships that wise insurers give as a matter of course. . . . The problems of preparing an adequate statute dealing with termination of insurance contracts are many: they include the truly chaotic underlying common law on the subject of contract termination and renewal, the great variety of procedures now used or historically applied by the insurance business, which vary not only from line to line of insurance but even, within lines, from company to company, the ambiguity of terminology and especially the many senses in

645

which the word 'renewal' is used, and the fact that a great variety of discrete problems exist. More and more keep surfacing as work proceeds on the subject.

Of necessity, this section has dealt with only the most obvious problems, and will need to be supplemented later. It seems desirable, despite complexity and variety of practice, to deal with the subject as broadly as possible rather than attempt to build a crazy-quilt of laws to accommodate a crazy-quilt of practices.

Section 24, ch. 144, Laws of 1969 (emphasis in original).

■ The Preliminary Comment indicates that the legislature intended to draft a comprehensive statute regulating the methods of termination of all insurance contracts, to do away with the "crazy-quilt" of methods in use for termination of insurance contracts, and to provide "peace of mind" to purchasers of insurance by providing that all insurance policies could only be canceled midterm in compliance with the statute. If we would now interpret sec. 631.36 as not regulating rescission *ab initio,* we would severely undermine the above-stated purposes of the statute.

■ We note that sec. 631.36, Stats., sets forth strict notice requirements for cancellation or nonrenewal in several subsections. As sec. 631.36 was intended to clear up the problems associated with all insurance cancellations and nonrenewals, and yet no separate notice requirements are provided for rescission, it would be unreasonable for us to conclude that the legislature did not contemplate that rescission is included within the term cancellation.

Both parties have cited us to decisions from other jurisdictions which have addressed issues similar to the

one before us in this case. As the court of appeals noted, a number of courts have concluded that the common law right of rescission does not survive the passage of a statute prohibiting cancellation, while other courts have found that rescission is not precluded by such statutes. *See WHEDA,* 159 Wis. 2d at 66 n.4 and cases cited therein. As the varying results of those cases indicate, whether or not a particular state's legislature has allowed insurers to retain the common law right of rescission is heavily dependent upon the particular statute and the legislative history at issue in each individual state. The decisions cited by the parties and the court of appeals do not persuade us that we reach an incorrect interpretation of sec. 631.36, Stats.

Verex argues that secs. 631.11(2) and (4), Stats., give insurers the right of rescission *ab initio* and that the construction of sec. 631.36, Stats., which we adopt conflicts with sec. 631.11(4). We do not agree. Sections 631.11(2) and (4) state in relevant part:

> **(2)** Effect of Misrepresentation or Breach of Affirmative Warranty. No misrepresentation or breach of an affirmative warranty affects the insurer's obligations under the policy unless the insurer relies on it and it is either material or is made with intent to deceive, or unless the fact misrepresented or falsely warranted contributes to the loss.
>
> . . .
>
> **(4)** Effect of Insurer's Knowledge. . . . If after issuance of a policy the insurer acquires knowledge of sufficient facts to constitute a general defense to all claims under the policy, the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to defend against a claim *if one should arise,* or within 120 days if it is deemed necessary by the insurer to secure additional medical information.

647

(Emphasis added). Neither of these subsections mentions rescission *ab initio*. The legislature could easily have done so if it had intended to give insurers such a right.

To the contrary, the emphasized language in sec. 631.11(4) indicates that sub. (4) applies prospectively only and does not provide an insurer the right to rescission *ab initio*. Section 631.11(4) only gives the insurer a general defense to claims that arise after the insurer has obtained the requisite knowledge, and then only if the insurer has given the insured notice within the specified time frames. Here, where the loss occurred prior to Verex's having obtained knowledge of any misrepresentations, sec. 631.11(4) does not apply.

*By the Court.*—The decision of the court of appeals is affirmed.