972 F.2d 346
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CITIZENS FEDERAL BANK, F.S.B., Plaintiff-Appellant,
v.
COMMERCIAL MORTGAGE INSURANCE, INC.; Defendant-Appellee
Chalmette Apartments Joint Venture, Defendant.
 No. 91-3283.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1992.
 
 Before KENNEDY and SUHRHEINRICH, Circuit Judges; and ENGEL, Senior Circuit Judge.
 ENGEL, Senior Circuit Judge.
 
 
 1
 Plaintiff Citizens Federal Bank appeals a summary judgment in favor of Defendant Commercial Mortgage Insurance, Inc. on all of Citizens Federal's claims arising from Commercial Mortgage's cancellation of a mortgage insurance policy. Citizens Federal claims that Commercial Mortgage breached its agreement to provide mortgage insurance at "no cost" to Citizens Federal, and also violated Wisconsin Code § 631.36 by failing to notify Citizens Federal of its cancellation of the insurance. We affirm.
 
 I.
 
 2
 In 1974, Citizens Federal Bank[1] purchased loans made to Movie Makers, Inc. for the acquisition of two apartment complexes in Dallas, Texas. As additional protection against default, Citizens Federal obtained mortgage insurance from Commercial Mortgage Insurance, Inc. ("CMI") for the transaction. Mortgage insurance protects the lender from nonpayment by the borrower.
 
 
 3
 Movie Makers fell on hard times in 1977 and filed for bankruptcy. This action prompted Citizens Federal to foreclose on the mortgage and make a claim on the insurance policy. The policy offered two payment options: (1) CMI could pay twenty percent of the original loan amount and Citizens Federal would retain title to the property or (2) CMI could pay the total outstanding loan amount and obtain title to the property.
 
 
 4
 CMI attempted to exercise the former option, paying only $268,000 on the claim. Attesting to the undesirability of the property, Citizens Federal strongly objected to CMI's choice, touching off a series of negotiations between the parties. They reached an agreement on April 26, 1978 (the "1978 Agreement"). CMI agreed to buy the property for $1,301,849.59, making a cash payment of $130,249.59 and taking out a two-year nonrecourse mortgage for $1,261,600 from Citizens Federal. The terms of the mortgage provided for a 9.5% interest rate, with interest only payments for the first year. The 1978 Agreement required CMI to return the fire damaged buildings to marketable condition, but limited their total cash outlay to $268,000. CMI also agreed to attempt to sell the apartments, and obtain financing for the sale. Upon the sale of the property, Citizens Federal would receive its mortgage balance plus the amount of CMI's cash payment. If CMI could not find a buyer within two years, Citizens Federal would receive the property free and clear, and CMI would pay Citizens Federal an amount necessary to make CMI's expenditures equal to $268,000. The 1978 Agreement limited CMI's exposure to a loss from the sale to $268,000, and in the event that a profit could be made on the sale CMI could obtain reimbursement of its expenditures.
 
 
 5
 CMI found a purchaser, Clifford Properties, for the buildings in 1979. Clifford Properties would pay for the properties by assuming CMI's nonrecourse note. As required, Citizens Federal consented to the sale, with the condition that CMI provide mortgage insurance. Not one to make the same mistake twice, Citizens Federal also required that CMI remove the twenty percent payment option from the insurance policy for the properties.
 
 
 6
 The parties agreed to the terms, and the closing occurred on August 15, 1979. After the closing, Citizens Federal discovered that the mortgage insurance policy still contained the offensive twenty percent clause. Citizens Federal complained to CMI, and the two parties met in CMI's offices in Wisconsin. There, CMI executed a letter waiving the twenty percent payment option.
 
 
 7
 In March 1981, Clifford Properties requested permission from Citizens Federal to sell the buildings to Chalmette Apartments Joint Venture and Greentree Apartments Joint Venture (the "Joint Ventures"). Citizens Federal replied by sending a letter to the Joint Ventures, Clifford Properties and CMI. The letter conditioned its approval of the sale on continuing provision of mortgage insurance by CMI. The letter specifically provided: "The mortgage insurance policy currently in effect on this mortgage loan being carried with Commercial Mortgage Insurance, Inc. shall remain in full force and effect at no cost to [Citizens Federal] for the life of the loan. The cost of the policy premium shall be paid by the purchaser/grantee of the [apartments]." The letter specifically required the buyer and the seller to sign the letter and return it to Citizens Federal. While CMI signed the letter, neither the Joint Ventures nor Clifford Properties did so. Nonetheless, the transfer took place.
 
 
 8
 By July of 1981, the Joint Ventures had stopped paying the insurance premiums. CMI notified Citizens Federal of the problem, and requested their assistance in obtaining payment from the Joint Ventures. After Citizens Federal pressured it, the Joint Ventures paid the premiums for the period August 1981 to August 1982.
 
 
 9
 The Joint Ventures failed, once again, to make the mortgage insurance payments in 1983. This time, instead of contacting Citizens Federal, CMI summarily cancelled the policy in August 1983.
 
 
 10
 The Joint Ventures defaulted on their mortgage obligation in August 1987. Citizens Federal attempted to make a claim on the mortgage insurance policy in April 1988. CMI denied the claim, informing Citizens Federal that the policy had been cancelled in 1983 due to Citizens Federal's nonpayment of premiums.
 
 
 11
 Citizens Federal filed suit against CMI claiming breach of contract for the failure to provide insurance or notice of cancellation. They also claimed that CMI was negligent in its failure to notify them of nonpayment and cancellation of the policy. Finally, Citizens Federal also asserted promissory estoppel against CMI. The district court granted CMI summary judgment on all counts. Citizens Federal appeals from the summary judgment order.
 
 II.
 
 12
 Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. We review a grant of a summary judgment motion de novo. Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir.), cert. denied, 111 S.Ct. 137 (1990).
 
 
 13
 First, Citizens Federal claims that the district court erred in granting summary judgment on its breach of contract claim. Citizens Federal alleged that CMI had contracted to provide insurance at "no cost" to Citizens Federal, and so was under a contractual duty to provide insurance regardless of whether the insurance premiums were paid. The district court disagreed. Looking at the terms of the March 1981 letter, quoted above, the district court held that the obligation to provide insurance extended only as long as the premiums were paid.
 
 
 14
 Citizens Federal argues that the district court erred in looking only to the 1981 letter to determine the contractual obligations of the parties. If the court had looked at the 1979 transfer agreement, and the course of dealings of the party, it claims CMI's obligation to provide insurance at no cost would have been clear. Citizens Federal offers additional support for its interpretation of the contract by insisting that it would never have entered the deal without the protection of the mortgage insurance and at all times viewed the policy as additional security for the loan.
 
 
 15
 Both of these arguments lack merit. Whether the contract is viewed as beginning in 1979 or 1981, or whether we examine the course of dealings, at no point did CMI agree to provide insurance to Citizens Federal even if the premiums went unpaid. The contract instead constituted an agreement by the Joint Ventures to pay Citizens Federal's mortgage insurance premiums. In short, the Joint Ventures assumed Citizens Federal's obligation. When that obligation went unpaid, the contract did not require CMI to continue to provide insurance, nor did it require CMI to provide Citizens Federal with any notice of cancellation.
 
 
 16
 Citizens Federal's second argument, that the provision of insurance by CMI was essential to the sale, adds nothing to its claim. While the assertion may be true, no reasonable construction of the "no cost" language supports this intent. Simply because Citizens Federal would have required this protection does not guarantee that CMI would have granted the request. To insert this desired protection at this late date would alter the balance of risks contractually delegated to the parties. Simply put, the contract clearly did not require CMI to provide mortgage insurance past the date that someone paid the premiums.
 
 III.
 
 17
 Citizens Federal also challenges the grant of summary judgment to CMI on Citizens Federal's negligence claim. Citizens Federal alleges that CMI breached a Wisconsin statutory duty of care by failing to provide Citizens Federal with notice of cancellation for nonpayment. See WIS.STAT. § 631.36(2).[2] The district court held that while Wisconsin law applied, and that the statute in question did place an independent duty on the defendant, the statute did not apply to this insurance policy because it was not delivered in Wisconsin.
 
 
 18
 The court seemingly applied Wisconsin law to the contract because of the choice of law provision in the policy. This would be correct under the forum's choice of law principles if this were a contract claim.[3] Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co., 453 N.E.2d 683 (Ohio 1983). Negligence, however, is a tort claim. This requires a determination of which state has the most significant relationship to the case. Morgan v. Biro Mfg. Co., 474 N.E.2d 286 (Ohio 1984).[4]
 
 
 19
 In Morgan the Ohio Supreme Court adopted the Restatement approach to tort choice of law. To determine the most significant relationship, the court considers the following factors: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and" (5) any other relevant factors. Morgan, 474 N.E.2d at 289. The place of the injury and Citizens Federal's place of business is Ohio. The place of the conduct and CMI's place of business is Wisconsin. The relationship could be viewed as being centered in Texas, where the apartments were located. Additionally, the parties both seem to have legitimate expectations that the law of Wisconsin would apply. Thus, the most significant relationship test would also justify the application of the Wisconsin statute.
 
 
 20
 Citizens Federal's claim turns on the existence of a duty to notify, and section 631.36 of the Wisconsin statute does impose a duty of notification on the insurer. If the policy is not subject to the statute, however, no duty to notify exists. Section 631.01(1) limits the application of the Wisconsin insurance code to "policies delivered or issued for delivery in [Wisconsin], on property ordinarily located in [Wisconsin], on persons residing in [Wisconsin] when the policy is issued, or on business operations in [Wisconsin]" with certain very limited exceptions. WIS.STAT. § 631.01(1). The district court determined that the policy had not been delivered in Wisconsin. Consequently, the policy fell outside the scope of the Wisconsin insurance code, and the statute did not govern this case. Instead, CMI's duty would be defined by general common law, see Wisconsin Hous. & Economic Dev. Auth. v. Verex Assurance, Inc., 480 N.W.2d 490 (Wis.1992), and Citizens Federal has not identified any such duty.
 
 
 21
 Citizens Federal insists that a question of material fact remains as to whether the policy was delivered in Wisconsin. Citizens Federal refers to a deposition statement by one of CMI's employees indicating that CMI gave Citizens Federal a waiver of the twenty percent option at a 1979 meeting in Wisconsin. Citizens Federal argues this action both completed the contract and constituted delivery in Wisconsin.
 
 
 22
 Citizens Federal, however, never presented this argument to the district court. In opposing summary judgment, Citizens Federal relied not on the delivery of the waiver in Wisconsin, instead it attempted to raise inferences through CMI's status as a Wisconsin corporation that the district court correctly found to be inadequate. As we said in Wright v. Holbrook, 794 F.2d 1152 (6th Cir.1986), "[i]t is fundamental that 'parties cannot ... advance new theories or raise new issues in order to secure reversal of the lower court's grant of summary judgment." Wright, 794 F.2d at 1157. This rule "applies with particular force when the new issue requires development of additional facts." Russ' Kwik Car Wash v. Marathon Petroleum Co., 772 F.2d 214 (6th Cir.1985) (per curiam). Only in very limited circumstances have we chosen to ignore this mandate. See, e.g., Beaty v. United States, 937 F.2d 288 (6th Cir.1991) (allowing I.R.S. to make argument it had never been given opportunity to make below). The reasoning given by Citizens Federal, that counsel below failed "to recognize the threat by CMI's summary judgment motion, filed six weeks before the scheduled trial, and respond as fully as could have been done," does not provide such a circumstance. In fact, it offers one reason why new arguments are not allowed at the appellate court level: to require a party to advance its arguments below, providing greater assurance that the district court will correctly decide the issue and thereby lessening the need for appeals. Therefore, we do not address Citizens Federal's new argument and agree with the district court's determination that the policy was not delivered in Wisconsin and therefore section 631.36 imposed no duty of notification on CMI.
 
 IV.
 
 23
 We AFFIRM the district court's grant of summary judgment to CMI on all claims.
 
 
 
 [1]
 Citizens Federal Bank's predecessor in interest, Home Savings and Loan Association, entered into the contract with Commercial Mortgage. Citizens Federal Savings and Loan merged with Home Savings and Loan in October 1981. During the course of this litigation, Citizens Federal Savings and Loan became Citizens Federal Bank
 
 
 [2]
 Section 631.36 provides in relevant part:
 (2) MIDTERM CANCELLATION. (a) Permissible grounds. Except as provided by par. (c), no insurance policy may be canceled by the insurer prior to the expiration of the agreed term or one year from the effective date of the policy or renewal, whichever is less, except for failure to pay a premium when due or on grounds stated in the policy....
 (b) Notice. No cancellation under par. (a) is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policy holder.
 
 
 [3]
 One could make a fairly convincing argument that the failure to give notice is a breach of a statutorily implied term of adequate notification. But, since the statute could also be seen as establishing a duty of due care a tort claim is not precluded
 
 
 [4]
 Another option is to adopt an approach advocated by the Seventh Circuit. That court has honored stipulations of parties in tort claims, as well as in contract claims. Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185 (7th Cir.1985) (applying Illinois choice of law principles, court concluded policy of honoring party choice of law in contract cases would extend to honoring stipulation of applicable law in tort case.); Lloyd v. Loeffler, 694 F.2d 489 (7th Cir.1982) (honoring stipulation of Wisconsin law in wrongful interference with child custody case). Since the parties only dispute seems to be the effect of a particular Wisconsin statute, not whether the law of Wisconsin should be applied, this principle could reasonably be followed. It would seem particularly appropriate in this case, where the tort action is largely predicated on the existence of a contract