STATE, Respondent, v. ORETHUN, Appellant.

*No. 75–733–CR. Submitted on briefs May 3, 1978.—*
*Decided June 30, 1978.*
(Also reported in 267 N.W.2d 318.)

For the appellant the cause was submitted on the brief of *Smith and Hunsader* of Janesville.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J.   On August 1, 1975, Arvin Orethun was convicted by the county court of operating a motor vehicle after revocation of his operating privilege in violation of sec. 343.44(1), Stats.  On appeal to the circuit court, the county court's judgment was affirmed.  We affirm the circuit court's order.

Because Orethun had accumulated 12 demerit points within a twelve-month period, his operating privilege was revoked by the Division of Motor Vehicles for a six-month period starting December 2, 1974.  Sec. 343.32 (2), Stats.; Wis. Admin. Code, sec. MVD 11.05.  Orethun had earned his last six points upon conviction of speeding on December 2, 1974.  Orethun acknowledges that he received notice of the revocation.  Sec. 343.33(1), Stats.

On May 21, 1975 Orethun was charged with operating a motor vehicle after revocation of his operator's license.  Subsequently, Orethun successfully attacked the December 1974 speeding conviction by bringing a motion to vacate in the court of conviction.[1]  The trial court vacated the December 2, 1974 speeding conviction in June, 1975, and the Division of Motor Vehicles was so notified on June 18, 1975.  The vacation of the December conviction occurred after the date on which Orethun was charged with driving after revocation, *i.e.*, May 21, 1975, but before his conviction of that violation, *i.e.*, August 1, 1975.

---

[1] Sec. 343.27(2), Stats., provides, *inter alia*, that "[w]henever a person has been convicted in this state on the basis of a forfeiture of deposit or a plea of guilty or no contest and such person was not informed as required by this section [that his operating privilege may be revoked], he may, within 60 days after being notified of the revocation of his operating privilege, petition the court for reopening the judgment and for an opportunity to defend on the merits and the court shall so order.  Such an order automatically reinstates the revoked operating privilege."  Orethun petitioned the court, but not within sixty days of being notified of revocation.  The procedure by which Orethun reopened the judgment is not before us.

Ortheun argues that the vacation of his speeding conviction "dates back" to December 2, 1974 and thus has the effect of invalidating the license revocation, which was based in part on the six demerit points assessed for the December conviction. Orethun's contention is that he should be deemed to have had a valid operator's license in May 1975, and that therefore he cannot be charged with driving after revocation.

We do not accept Orethun's contention. First, the argument is not supported by the language of the statute. Sec. 343.39(1)(b), Stats., provides that an operating privilege is "automatically reinstated" when, in the case of a revocation based on a conviction, the conviction is vacated. Nothing in the statute indicates that the reinstatement is retroactive to the date of conviction; indeed the language of sec. 343.39(2), Stats. indicates that the reinstatement is as of the date the conviction is reversed.[2] Second, the legislature has set forth procedures for the administrative review of revocations made under the authority of sec. 343.32, Stats., as well as procedures for the judicial review of revocations which are not mandatory under ch. 343, Stats. Secs. 343.33 and 343.40, Stats. We do not believe the legislature intended to permit the driver whose license has been revoked to ignore these procedures with impunity and decide for himself that a revocation was invalid. Third, the legislature has provided various measures to protect the individual's operating privilege pending appeal from a conviction upon which revocation

[2] Sec. 343.39(2), Stats., provides:

"(2) Whenever a person's operating privilege is automatically reinstated, the division shall forthwith notify such person thereof and shall return to him any surrendered and unexpired license in its possession. If the license expired during the period of revocation or suspension, such person may renew his license at the standard renewal fee at anytime within 30 days after the reinstatement of his operating privilege."

could be based. Sec. 343.325(2), Stats., provides that if the administrator of the Division of Motor Vehicles receives a certificate from the court in which the conviction occurred stating that an appeal from the conviction has been taken, he shall not revoke a person's operating privilege on the basis of the conviction, or he shall reinstate the operating privilege if it has been revoked. See also sec. 343.27(2), Stats., which provides for automatic reinstatement of the revoked operating privilege upon a petition to the court to reopen a judgment.

When the legislature provides an opportunity for administrative and judicial review and provides, under certain circumstances, for retention of the driver's operating privilege pending appeal of a conviction which could result in revocation, there is no justification for permitting a driver whose operating privilege has been revoked to continue driving without seeking redress of his grievance through the available legal channels.

Orethun's situation is analogous to that of the person who fails to comply with an injunction and then argues that he should not be held in contempt because the injunction was erroneously granted. In *Getka v. Lader*, 71 Wis.2d 237, 246, 238 N.W.2d 87 (1976), this court set aside the trial court's injunction, but held the defendants in contempt for failing to obey the injunction prior to its being set aside. The court made the following observation:

"Setting aside the trial court injunction against the defendants does not, ipso facto, erase the contempt finding. . . . Where a court has jurisdiction over the subject matter and the parties, the fact that an order or judgment is erroneously or improvidently rendered does not justify a person in failing to abide by its terms. The subsequent appeal and reversal of the injunction here does not alter the obligation of the defendants in

this case to initially comply with such injunction until it was stayed or set aside." [Footnote omitted.]

*See also Vick v. Strehmel,* 197 Wis. 366, 373, 222 N.W. 307 (1928).

The rationale for this rule was discussed in *John F. Jelke Co. v. Beck,* 208 Wis. 650, 662, 663, 242 N.W. 576 (1932), as follows:

". . . If it is within the power of a party to an action, under the advice of counsel or the claim that he acts in good faith, to flout the judgments of a court and act in contravention thereto, then our system of government is wholly ineffectual to protect the rights of parties to actions who have submitted themselves to the jurisdiction of its courts; hence the duty of a citizen who is a litigant to obey the order of the court.

"As was said by the supreme court of the United States:

"'If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the constitution now fittingly calls the "judicial power of the United States" would be a mere mockery.' *Gompers v. Bucks Stove & R. Co.* 221 U.S. 418, 450, 31 Sup. Ct. 492.

"In recognition of the fact that courts may err, being presided over by a judge who is human, the constitution has carefully provided for the review of the determination made through presiding judges, acting in the name of the people as a court. It is the duty of all good citizens to await the orderly determination of the issues although their desires may be balked temporarily and even their rights denied pending a review of what they claim to be erroneous order."

Orethun did not attempt to challenge either the speeding conviction or the revocation of his operating privilege until after he had been arrested for driving after revocation of his operating privilege. Although the vacation of the speeding conviction would, in the absence

of other factors, result in reinstatement of Orethun's driving privilege, Orethun had to comply with and abide by the revocation of his operating privilege until a court or the administrator of the Division of Motor Vehicles stated otherwise.

*By the Court.*—Order affirmed.