STATE of Wisconsin, Plaintiff-Respondent,

v.

Kriss KNIESS, Defendant-Appellant.

Court of Appeals

*No. 93–0628–CR. Submitted on briefs June 18, 1993.—Decided July 27, 1993.*

(Also reported in — N.W.2d —.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen D. Willett* of *Willett & Klein, S.C.* of Phillips.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kurt P. Zengler*, assistant district attorney, of Merrill.

Before, Cane, P.J., LaRocque and Myse JJ.[1]

CANE, P.J.   Kriss Kniess appeals a trial court order refusing to modify his sentence for operating after revocation, sixth offense. Kniess sought to void the criminal penalties and have civil penalties imposed. He argues that his revocation was due solely to failure to pay a fine or forfeiture and, therefore, under *State v. Taylor*, 170 Wis. 2d 524, 489 N.W.2d 664 (Ct. App. 1992), he should only be subject to civil penalties. We conclude that Kniess's revocation was not due solely to failure to pay a fine or forfeiture and, therefore, the circuit court correctly denied his motion.

Kniess's substantial traffic violation record backgrounds this case. The dispositive portion of that record is as follows. Kniess's driving privileges were first suspended on April 8, 1988. Between that date and December 11, 1989, Kniess was arrested and convicted four times for operating after suspension or revocation. None of these suspensions or revocations was the result of failure to pay a fine or forfeiture.

On December 11, 1989, Kniess was arrested for operating while under the influence and operating after revocation.[2] As a result of this and Kniess's prior driving record, Kniess was determined an habitual

---

[1] This is a three-judge decision pursuant to the Chief Judge's July 9, 1993 order.

[2] According to our review of Kniess's Driving Record Abstract, dated July 15, 1991, contained in the record, Kniess was convicted of operating while suspended or operating after revocation seven times within the five years before June 4, 1991. The briefs indicate that this is Kniess's sixth OAR or OAS offense in the past five years. In any event, it is undisputed that the June 4, 1991, OAR offense was at least Kniess's fifth such offense within the past five years.

traffic offender and his driving privileges were also suspended until December 11, 1994. After December 11, 1989, Kniess's privileges were suspended twice for failure to pay a fine or forfeiture. On June 4, 1991, Kniess was again arrested for unlawfully operating a motor vehicle after having his driving privileges revoked and/or suspended.

Kniess pleaded guilty to driving after revocation, and the trial court imposed criminal penalties under sec. 343.44(2), Stats., for a fifth or subsequent OAS or OAR conviction. In the wake of a decision by this court in *Taylor*, Kniess moved to modify his sentence, claiming that at the time of his last OAR, the revocation was based solely on a failure to pay a fine or forfeiture. The trial court denied Kniess's motion and Kniess appealed.

The state contends that on June 4, 1991, Kniess had in effect two suspensions for failure to pay a fine or forfeiture, and one suspension each for being an habitual traffic offender,[3] operating with an illegal blood alcohol concentration, operating while intoxicated and eluding an officer. The state also claims that on June 4, 1991, Kniess had in effect an operating while intoxicated revocation and four revocations for operating a motor vehicle while suspended.

Kniess disputes the fact that on June 4, 1991, he was under suspension or revocation for operating a vehicle while under the influence, operating a vehicle with a prohibited blood alcohol content or eluding an officer. However, Kniess does not dispute that on June 4, 1991, he was under revocation for being an habitual traffic offender. Indeed, a review of his driving record

---

[3] Kniess's license was actually revoked for five years after being classified an habitual traffic offender.

reveals that this revocation runs until December 11, 1994.[4]

■

This case presents a question of statutory interpretation that we review as a question of law without deference to the trial court. *Taylor*, 170 Wis. 2d at 527, 489 N.W.2d at 666. Section 343.44, Stats., sets the penalties for driving after suspension or revocation of driving privileges. Subsection (2)(e) provides:

> (e)1. Except as provided in subd. 2, for a 5th or subsequent conviction under this section or a local ordinance in conformity with this section within 5 years, a person shall be fined not less than $2,000 nor more than $2,500 and shall be imprisoned for not less than 6 months nor more than one year in the county jail.
> 2. If the revocation or suspension that is the basis of a violation was imposed solely due to a failure to pay a fine or a forfeiture, or was imposed solely due to a failure to pay a fine or forfeiture and one or more subsequent convictions for violating sub. (1), the person shall forfeit not less than $2,000 nor more than $2,500. This subdivision applies regardless of the person's failure to reinstate his or her operating privilege.

In *Taylor*, we held that the trial court was limited to imposing the civil penalties set out in subd. 2 in a case where the defendant's suspension or revocation was based solely on the failure to pay forfeitures or fines. The state argued that the defendant's classification as an habitual traffic offender was an additional

---

[4] He also does not dispute that he was under the four revocations for operating while suspended. However, because the habitual traffic offender revocation is dispositive, we need not discuss the effect of the four revocations for OAS.

454

basis for the revocation. We disagreed, noting that being an habitual traffic offender is not a separate offense, but is a status suspending one's driving privileges based upon a driving record that can result in exposure to enhanced penalties. In *Taylor*, the defendant's habitual traffic offender suspension was based solely on his failure to pay fines or forfeitures.

Here, however, Kniess's suspension as an habitual traffic offender was based on a barrage of traffic crimes and violations, none of which involved failing to pay a fine or forfeiture. Our reluctance in *Taylor*, to rely on an OAS or OAR occurring during a suspension or revocation imposed under the habitual traffic offender provisions, occurred not because we viewed these suspensions as somehow less effective than other suspensions, but rather because the suspension at issue in *Taylor* was caused solely by a failure to pay a fine or forfeiture, a condition under which subsec. 343.44(2)(e)2, Stats., mandates only civil penalties.

In *State v. Biljan*, 177 Wis. 2d 14, 20, 501 N.W.2d 820, 823 (Ct. App. 1993), we clarified the rule of *Taylor*, writing:

> [I]f a revocation or suspension in effect at the time the defendant is cited for OAR or OAS was imposed for other than, or in conjunction with, the defendant's failure to pay a fine or forfeiture, the defendant's failure to pay a fine or forfeiture is not the sole basis for the revocation or suspension; therefore, [the civil penalty provisions do][5] not apply.

[5] *Biljan* refers to sec. 343.44(2)(c)2, which is analogous to subsec. 343.44(2)(e) for three OAR or OAS convictions. Suspensions or convictions based solely on a failure to pay mandate

Here, the habitual traffic offender suspension that was in effect when Kniess was arrested for OAS on June 4, 1991, was imposed for reasons other than Kniess's failure to pay a fine or a forfeiture. Thus, sec. 343.44(2)(c)2 does not apply and criminal sanctions under sec. 343.44(2)(c)1 were available against Kniess. Therefore, the trial court order properly denied Kniess's motion to modify the sentence.

*By the Court.*—Order affirmed.

only civil penalties on the second, third, fourth and fifth or subsequent OAR or OAS conviction. *See* subsecs. 343.44(2)(b)2, 343.44(2)(c)2, 343.44(2)(d)2 and 343.44(2)(e)2, Stats.