STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeremy J. HANSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 99–3142–CR. Oral argument April 12, 2001.—Decided June 26, 2001.*

2001 WI 70

(Also reported in 628 N.W.2d 759.)

For the defendant-appellant-petitioner there were briefs by *James B. Connell* and *Crooks, Low, Connell &*

*Rottier, S.C.*, Wausau, and oral argument by *James B. Connell*.

For the plaintiff-respondent the cause was argued by *Kathleen M. Ptacek*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

¶ 1. ANN WALSH BRADLEY, J. The defendant, Jeremy J. Hanson (Hanson), seeks review of a decision of the court of appeals upholding the circuit court's judgment convicting him of operating a motor vehicle while his operating privileges were revoked as a habitual traffic offender (HTO).[1] Hanson contends that because his HTO status was rescinded pursuant to Wis. Stat. § 351.09 (1997–98),[2] the circuit court erroneously imposed a criminal sentence rather than a civil forfeiture.

¶ 2. We conclude that a criminal sentence based solely upon Hanson's HTO status, which was rescinded under § 351.09 prior to his conviction, is a sentence in excess of that authorized by law and is invalid under Wis. Stat. § 971.13. However, given the state of the record, we cannot determine whether Hanson's driving record supported a criminal sentence even without consideration of his HTO status. Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for such a determination.

---

[1] *State v. Hanson*, No. 99–3142–CR, unpublished slip opinion (Wis. Ct. App. June 8, 2000) (affirming judgment of conviction and order denying a motion for post-conviction relief entered in the Circuit Court for Waupaca County, John P. Hoffman, Judge).

[2] Unless otherwise noted, all subsequent statutory references to the Wisconsin Statutes are to the 1997–98 version.

¶ 3. On four occasions in 1996, Hanson was convicted of operating a motor vehicle after his license had been revoked or suspended (OAR/OAS), contrary to Wis. Stat. § 343.44(1) (1995–96). As a consequence of the four OAR/OAS convictions, Hanson was classified as an HTO in December 1996 pursuant to Wis. Stat. § 351.02 (1995–96). His HTO classification resulted in the revocation of his driving privileges for a period of five years. *See* Wis. Stat. § 351.025(1) (1995–96). The five-year HTO revocation was one of a number of suspensions and revocations imposed upon Hanson for his numerous 1996 violations.

¶ 4. While still subject to the HTO revocation, and perhaps to other suspensions and revocations, Hanson was caught illegally driving a fifth time on October 31, 1998. Hanson was charged with his fifth violation of Wis. Stat. § 343.44(1). In the criminal complaint, the State listed the four 1996 OAR/OAS convictions and alleged that for his fifth offense Hanson was subject to a maximum fine of $2,500 and a potential sentence of one year in jail.

¶ 5. The complaint also set forth that Hanson's sentence was subject to enhancement due to his HTO classification. The state alleged that under Wis. Stat. § 351.08, Hanson was subject to an additional $5,000 fine and a possible 180 additional days of imprisonment.

¶ 6. Following the issuance of the complaint, Hanson pursued a rescission of his HTO status through the Department of Transportation (Department). As part of the 1997 legislative overhaul of the offense of OAR/OAS, which included the removal of OAR/OAS as a predicate offense that may be used to classify a driver as an HTO, the Department was

authorized to redetermine a driver's HTO status without consideration of OAR/OAS convictions. Wis. Stat. § 351.09; 1997 Wis. Act 84, §§ 149, 151. In February 1999, the Department rescinded Hanson's HTO status, which was based on his OAR/OAS convictions, pursuant to Wis. Stat. § 351.09.[3]

¶ 7. Subsequent to the rescission of his HTO status, in May 1999, the defendant entered a plea of no contest to the charge of OAR, fifth offense, as an HTO, as alleged in the criminal complaint. During the plea colloquy, Hanson admitted that the OAR offense was his fifth offense and that as a result the court could impose a sentence of up to one year in jail. Hanson also admitted that he had been adjudged an HTO in December 1996 and that as a consequence of his HTO status the court could impose an additional 180 days in jail. Thereafter, the circuit court accepted his plea of no contest, imposed a fine of $300, and sentenced Hanson to 20 days in jail. In rendering the sentence, the circuit court did not articulate whether the OAR offense, the HTO enhancer, or both, provided the basis for the criminal penalty.

¶ 8. Thereafter, Hanson pursued a post-conviction motion challenging the imposition of a term of imprisonment and requesting that the circuit court substitute the criminal sentence with a civil forfeiture. His argument was premised on the February 1999 rescission of his HTO status. Hanson argued that because his HTO status had been rescinded, it could

---

[3] In its brief to this court, the State argued that there was nothing in the record documenting the Department's rescission of Hanson's HTO status. However, at oral argument the State acknowledged that a reference to the "release" of Hanson's HTO status in the abstract of Hanson's driving record signified the rescission of the HTO status pursuant to Wis. Stat. § 351.09.

not be the basis for the imposition of a criminal sentence. He further advanced that in the absence of the HTO enhancer, there was no basis for imposing a criminal sentence.

¶ 9. The circuit court denied Hanson's motion, and Hanson appealed. In an unpublished decision, the court of appeals concluded that Hanson had waived the right to challenge his conviction and sentence by the entry of his no contest plea.

## II

¶ 10. In order to adequately address the parties' arguments, we believe a brief introduction to the recent legislative changes and relevant statutory scheme is necessary.

¶ 11. In 1997, the Wisconsin legislature enacted sweeping changes to the treatment of the motor vehicle offenses of operating after suspension (OAS) and operating after revocation (OAR). These changes were made in response to the recommendations of the 1995 Governor's Task Force on Operating After Revocation and Operating While Intoxicated and reflect an intent to simplify the previously confusing and complicated law of OAR and OAS.

¶ 12. Prior to August 1, 2000, the effective date of many of the relevant provisions of 1997 Wis. Act 84, operating after revocation and operating after suspension were treated as one offense (OAR/OAS). *See* Wis. Stat. § 343.44(1).[4] The punishment upon conviction

---

[4] A brief synopsis of the statutory changes and their effective dates is provided by John Sobotik, *OAR and OWS Law Changes Begin*, Wis. Law., Feb. 2000, at 24–25. The author is assistant general counsel for the Wisconsin Department of Transportation and prepared the findings of the 1995 Governor's Task Force relating to OAR and OAS.

was dependent upon the underlying basis for the revocation or suspension and the number of prior OAR/OAS convictions. *See* Wis. Stat. § 343.44(2). A driver who violated a suspension or revocation imposed solely for failure to pay a fine or forfeiture was subject only to a civil forfeiture. *See, e.g.*, Wis. Stat. § 343.44(2)(e)2. The amount of that forfeiture increased with each successive OAR/OAS conviction. A driver whose privileges were suspended or revoked for any other reason was subject to a civil forfeiture for the first offense of OAR/OAS, but faced potential imprisonment for all subsequent offenses. *See* Wis. Stat. § 343.44(2).

¶ 13. Currently, as a result of the 1997 legislation, the offenses of OAS and OAR are individual offenses. *See* Wis. Stat. § 343.44(1)(a) & (b) (1999–2000). The legislature has provided that revocation of driving privileges is to occur for more serious violations. *See generally* Wis. Stat. § 343.30 (1999–2000). Consequently, OAR is treated as a criminal offense, the violation of which carries the potential for imprisonment. Wis. Stat. § 343.44(2)(b) (1999–2000). Suspensions, on the other hand, are now reserved for more minor infractions. *See generally* Wis. Stat. § 343.30 (1999–2000). Thus, OAS is treated as a less serious violation, for which the only penalty is a civil forfeiture. Wis. Stat. § 343.44(2)(a) (1999–2000).

¶ 14. 1997 Wis. Act 84 also made changes to chapter 351, which defines and regulates habitual traffic offenders. 1997 Wis. Act 84, §§ 149–52. Under the prior statutory scheme, a person who had been convicted of four OAR/OAS offenses was classified as an HTO pursuant to Wis. Stat. § 351.02(1)(a)4 (1995–96).

The changes to Wis. Stat. § 343.44 were effective August 1, 2000 pursuant to an order of the Department of Transportation. Wis. Admin. Reg. No. 534, 24–25 (June 2000).

Classification as an HTO subjects the driver to a five-year revocation and also serves as a penalty enhancer for subsequent violations of § 343.44. Wis. Stat. § 351.025 & § 351.08. A driver classified as an HTO who is convicted of violating § 343.44 is subject to an additional fine of up to $5,000 and an additional term of imprisonment of up to 180 days in jail. Wis. Stat. § 351.08.

¶ 15. Consistent with the legislative intent to decriminalize OAS, 1997 Wis. Act 84 amended chapter 351 to alleviate the effect of prior OAR/OAS convictions on repeat offenders who had been classified as HTOs as a result of those convictions. It did so by removing OAR/OAS from the list of offenses that may serve as the basis for determining HTO status. 1997 Wis. Act 84, § 149.

¶ 16. Most important for our purposes, the legislature also provided for the recalculation of HTO status of those drivers already determined to be HTOs because of OAR/OAS convictions through the creation of Wis. Stat. § 351.09. Under § 351.09, a driver can request that the Department recalculate a previous HTO determination without consideration of OAR/OAS convictions, and may have the HTO status rescinded and driving privileges reinstated, if appropriate:

> If the recalculation demonstrates that the person is not a habitual traffic offender or repeat habitual traffic offender, the department shall rescind the order declaring the applicant a habitual traffic offender or repeat habitual traffic offender. Upon the completion of the recalculation under this section, the department shall provide written notice to the person of the result of the recalculation, of the order of rescission, if any, under this section and, if

413

> appropriate, of the process for reinstating the person's operating privilege.

Wis. Stat. § 351.09.

¶ 17. When it enacted 1997 Wis. Act 84, the legislature assigned to the Department the authority to determine the effective dates of the various provisions of the act. Wis. Stat. § 85.515. Many provisions, including the revisions to § 343.44, did not become effective until August 1, 2000. Wis. Admin. Reg. No. 534, 24–25 (June 2000). However, the Department implemented § 351.09 on an earlier date, allowing the recalculation and rescission of HTO determinations to begin on August 1, 1998. Note, Wis. Stat. § 351.09; Wis. Admin. Reg. No. 510, 51–52 (June 1998).

¶ 18. As a consequence of the staggered implementation of 1997 Wis. Act 84, the case before us presents us with a blend of the old and the new. Hanson was convicted under the prior statutory scheme. Therefore, the definition of the offense and the appropriate level of punishment are defined by since-supplanted statutory provisions. However, because of the DOT's early implementation of § 351.09, this case also presents us with issues involving the new statutory scheme, namely the effect of the Department's rescission of Hanson's HTO status on his sentence.

III

¶ 19. At the outset, the State contends that we should not reach the merits of Hanson's challenge. It argues that Hanson waived the challenge to the sentence by entering a plea of no contest. We disagree.

¶ 20. Hanson contests the imposition of criminal penalties by the circuit court on the grounds that the sentence imposed by the circuit court is a penalty in

excess of that authorized by law.[5] As such, his argument implicates the command of Wis. Stat. § 973.13:

> Excessive sentence, errors cured. In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.

Wis. Stat. § 973.13. "When a court imposes a sentence greater than that authorized by law, § 973.13 voids the excess." *State v. Spaeth*, 206 Wis. 2d 135, 155, 556 N.W.2d 728 (1996) (applying § 973.13 to sentence imposed upon conviction for OAR). If the rescission of Hanson's HTO status precluded the use of the Wis. Stat. § 351.08 penalty enhancer and if the defendant was not otherwise subject to criminal penalties, the imposition of a criminal sentence would be void as it is in excess of that authorized by law.

■

¶ 21. Section 973.13 requires Wisconsin courts to declare a sentence void "*[i]n any case* where the court imposes a maximum penalty in excess of that authorized by law." § 973.13 (emphasis added). In an analogous context, our court of appeals concluded that the command of § 973.13 allowed a defendant to challenge a faulty repeater sentence despite the existence of an otherwise effective procedural bar. *State v. Flowers*, 221 Wis. 2d 20, 22–23, 586 N.W.2d 175 (Ct. App.

---

[5] Hanson also frames his challenge as an attack on the subject matter jurisdiction of the circuit court. However, because we find his challenge to the legality of the sentence dispositive, we need not address his jurisdictional challenge.

1998).[6] In explaining that the mandate of § 973.13 prevents the imposition of a sentence not authorized by the legislature, the court of appeals advanced the interest of justice over the interest of finality:

> To adopt the State's argument would promote finality, but at the expense of justice. It would raise the specter of a defendant being incarcerated for a term (possibly years) in excess of that prescribed by law simply because he or she failed to raise the issue earlier. Such a result is in direct conflict with the explicit language of § 973.13. The State is without authority to incarcerate individuals for a term longer than the maximum term authorized by law. Therefore, we conclude that the express statutory mandate in § 973.13 to alleviate all maximum penalties imposed in excess of that prescribed by law applies to faulty repeater sentences and is not "trumped" by a procedural rule of exclusion.

*Id.* at 29.

¶ 22. As in *Flowers*, to allow the imposition of a criminal penalty where none is authorized by the legislature, simply on the basis of waiver, would ignore the dictate of § 973.13. We thus reach the merits of Hanson's challenge and determine whether any basis existed for the imposition of a criminal sentence.

### A

¶ 23. Hanson challenges the imposition of a criminal sentence for his conviction. He maintains that the

---

[6] The procedural bar faced by the defendant in *State v. Flowers*, 221 Wis. 2d 20, 586 N.W.2d 175 (Ct. App. 1998), was that posed by Wis. Stat. § 974.06(4) and this court's decision in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994).

sole basis for the criminal sentence was his HTO status and that because his HTO status was rescinded pursuant to § 351.09, the circuit court should have imposed a civil forfeiture rather than a criminal sentence.

¶ 24. The resolution of this challenge hinges on the interpretation of Wis. Stat. § 351.09, and in particular the words "rescind" and "rescission" as they are used in that statute. Interpretation of a statute is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. *State v. Floyd*, 2000 WI 14, ¶ 11, 232 Wis. 2d 767, 606 N.W.2d 155. The sole purpose of statutory interpretation is to ascertain the intent of the legislature by first examining the language of the statute. *State v. Vennemann*, 180 Wis. 2d 81, 93, 508 N.W.2d 404 (1993).

¶ 25. Hanson argues that the effect of the Department's rescission of his HTO status was to nullify and, in essence, void *ab initio*, his HTO classification, thus precluding the applicability of the § 351.08 HTO penalty enhancer. The State argues the rescission under § 351.09 does not relate back to the date of the offense, October 31, 1998, and because Hanson was an HTO on the date he committed the offense, he was properly sentenced.

¶ 26. We conclude that as a consequence of the rescission of Hanson's HTO status, he could not be subject to the HTO penalty enhancer when subsequently convicted of a violation of § 343.44(1). Accordingly, it was beyond the power of the circuit court to impose a criminal sentence based solely upon Hanson's rescinded HTO status. We base this conclusion on the ordinary and accepted meaning of the words "rescind" and "rescission," the legal implications

of those words, and the legislative history of Wis. Stat. § 351.09.

¶ 27. We begin with the language of the statute. Wisconsin Stat. § 351.09 directs that when recalculating a defendant's HTO status "[i]f the recalculation demonstrates that the person is not a habitual traffic offender or repeat habitual traffic offender, the department shall *rescind* the order declaring the applicant a habitual traffic offender." Wis. Stat. § 351.09 (emphasis added). The statute also refers to the order entered upon such a recalculation as an "order of *rescission*." *Id.* (emphasis added).

■

¶ 28. When interpreting a statute, we must give effect to the ordinary and accepted meaning of the language chosen by the legislature. Wis. Stat. § 990.01(1) (1999–2000); *Seider v. O'Connell*, 2000 WI 76, ¶ 32, 236 Wis. 2d 211, 612 N.W.2d 659. We thus attribute to the operative words of § 351.09, "rescind" and "rescission," their ordinary and accepted meaning.

¶ 29. To "rescind" is commonly understood, when used by lawyers and non-lawyers alike, to mean "[t]o abrogate or cancel" or "[t]o make void, to repeal or annul." *Black's Law Dictionary* 1308 (7th ed. 1999); *see The American Heritage Dictionary of the English Language* 1534 (3d ed. 1993) ("To make void, repeal or annul."). "Rescission" too shares a likeness of meaning in both legal and non-legal contexts, and generally refers to the annulment or abrogation of something, *i.e.*, the act of rescinding. *The American Heritage Dictionary of the English Language* 1534 (3d ed. 1993).

¶ 30. This court visited the meaning of the words "rescind" and "rescission" on a prior occasion, concluding that as a matter of general usage the terms relate to abrogation or annulment:

> " 'Rescind' and 'rescission' are words in ordinary use and should have no different signification in legal terminology than they have in other connections. 'Rescind' means to abrogate or annul, and may be applied to a variety of transactions such as a vote, a transfer of property or a contract."

*Illges v. Congdon*, 248 Wis. 85, 95b, 20 N.W.2d 722 (1945) (quoted source omitted).

¶ 31. The words "rescind" and "rescission" also carry certain legal implications, which are consistent with their ordinary and accepted meaning. The legal effect of a rescission is an undoing from the beginning and a return to status quo ante. This legal effect of a rescission is expressed most clearly in the realm of contract law:

> The effect of a rescission of a contract is to restore the parties to the position they would have occupied had no contract ever been made. In other words, when a contract is rescinded the parties are placed in the status quo as if no contract had ever been made.

*Schnuth v. Harrison*, 44 Wis. 2d 326, 339, 171 N.W.2d 370 (1969) (footnote omitted); *see also Wagner v. Wagner*, 80 Wis. 2d 299, 302, 259 N.W.2d 60 (1977) ("[T]he right of rescission. . .will undo the mischief *ab initio* and restore the parties, substantially to their original situation."). The notion that rescission amounts to an undoing *ab initio* has been acknowledged more recently by this court:

> The parties have used the words "rescission *ab initio*" and "rescission" interchangeably. Because we can find no difference in the meaning of either expression, we have done the same.

419

*Wisconsin Housing & Econ. Dev. Auth. v. Verex Assurance, Inc.*, 166 Wis. 2d 636, 643 n.2, 480 N.W.2d 490 (1992).[7]

¶ 32. Given the accepted meaning of the language of § 351.09 and the legal effect attributable to "rescind" and "rescission," we conclude that the effect of the Department's recalculation of Hanson's HTO status was an annulment and abrogation of that status from the outset of its existence. Consequently, when the circuit court sentenced Hanson, it could not properly treat him as an HTO, or for that matter as if he ever were an HTO. Hanson's rescinded HTO status can have no legal effect and Hanson must be treated as if it never existed.

¶ 33. The ordinary and accepted meanings of the language of § 351.09 and the legal implications given to those words are supported by the legislative history of Wis. Stat. § 351.09. As we explained above, § 351.09 was created by 1997 Wis. Act 84, which enacted the recommendations of the 1995 Governor's Task Force. *See* 1997 S.B. 470 (containing analysis of the Legisla-

---

[7] The State directs us to one case in which the word "rescind" was construed merely as a cancellation with only prospective application. *Milwaukee Elec. Ry. & Light Co. v. Railroad Comm'n*, 169 Wis. 421, 427–28, 172 N.W. 746 (1919). In *Milwaukee Electric Railway*, this court concluded that the Railroad's rescission of a prior order, pursuant to statute, did not render the prior order void *ab initio*, but rather simply terminated the order from that time onward. *Id.*

However, the court's discussion of the meaning of "rescind" in *Milwaukee Electric Railway* is an anomaly in light of discussions in preceding and subsequent case law, including those in the case law of the period. *See, e.g., Mueller v. Michels*, 184 Wis. 324, 332, 197 N.W. 201 (1924) (" 'To rescind a contract is not merely to terminate it but to abrogate and undo it from the beginning.' ").

tive Reference Bureau); 1997 A.B. 795.[8] The task force's initial recommendation called for "Amnesty/Recalculation of HTO Status":

> Amnesty/Recalculation of HTO Status (Non-statutory provisions)
>
> The department shall review its orders revoking persons' operating privileges as habitual traffic offenders. If the department concludes that a person's operating privilege would not have been revoked and would not be revoked as a habitual traffic offender or repeat habitual traffic offender if offenses were counted in accordance with the provisions of Ch. 351, Stats., as amended by this law rather than the law in effect at the time of the prior order, the department shall recind [sic] the order.

Legislative Reference Bureau Drafting File for 1997 A.B. 795, Recommendations of Governor's Task Force on OAR/OWI (Oct. 24, 1995). This recommendation was subsequently adopted by the legislature, albeit in modified form, and codified as § 351.09.[9]

¶ 34. We find significant the use of the word "amnesty" by the Governor's Task Force in making its recommendation. It signifies to us that the Task Force intended broad relief to those who had been classified

---

[8] The core of the provisions that became 1997 Wis. Act 84 began in the Wisconsin Assembly as 1997 Assembly Bill 795.

[9] The primary changes in the recommendation of the 1995 task force were that the provision allowing for rescission of HTO status be a statutory provision and that the rescission be initiated by a request of the driver. *See* Wis. Stat. § 351.09. These changes were initiated at the request of the Department. *See* Legislative Reference Bureau Drafting File for 1997 A.B. 795, Memorandum from John Sobotik, Office of General Counsel, Wisconsin Department of Transportation, to Paul Nilsen, Legislative Reference Bureau (July 22, 1997).

as an HTO as a consequence of the convictions for OAR/OAS, an offense believed by the Task Force to be a "minor offense." *Id.* We believe that this evidence of an intent to provide expansive relief to those determined to be HTOs as a consequence of OAR/OAS convictions supports our interpretation of the ordinary and accepted meaning of "rescind" and "rescission" as those terms are used in § 351.09 and the legal effect attributable to those terms.

¶ 35. Contrary to the conclusions we draw from our above language and legislative intent analysis, the State advances that our prior decision in *State v. Orethun*, 84 Wis. 2d 487, 267 N.W.2d 318 (1978), should control. In *Orethun*, the defendant, after being charged with operating after revocation, obtained a vacation of a speeding conviction on which the revocation of his driving privileges was based. Consequently, the defendant argued that a statutory provision calling for "automatic reinstatement" of his driving privileges related back to the date of his OAR/OAS offense. We disagreed, concluding that the reinstatement did not apply retroactively and that he was properly convicted of operating a vehicle while his license was revoked on the date of the offense. *Id.* at 489.

¶ 36. The State maintains that the reasoning of *Orethun* should apply to Hanson's HTO status, which was not undone until after he committed the OAR offense. We do not find *Orethun* controlling in the instant case for the simple reason that *Orethun* relied upon and interpreted a different statute. Section 351.09, unlike the statute discussed in *Orethun*, calls for a "rescission" of Hanson's HTO status. As we have explained, today's decision rests upon the operation of "rescind" and "rescission" in § 351.09.

¶ 37. The State also attempts to draw distinctions between the automatic reinstatement of driving privileges in *Orethun* and the affirmative steps required of a driver whose HTO status has been rescinded to obtain reinstatement of their driving privileges under § 351.09. We do not see how this is relevant to the discussion of the rescission of Hanson's HTO status and its use as a penalty enhancer. This case is not about the reinstatement of Hanson's driving privileges. This case concerns only the impact of the rescission of his HTO status on the appropriate penalty to be meted out for his OAR conviction.

¶ 38. As a consequence of the rescission of Hanson's HTO status, we conclude that the circuit court could not properly impose a criminal penalty based solely upon that status. The imposition of a criminal penalty based solely upon that status would be in excess of that authorized by the legislature and must be declared void pursuant to Wis. Stat. § 971.13.

## B

¶ 39. Having concluded that the circuit court could not properly impose a criminal penalty based on Hanson's rescinded HTO status, we must address whether Hanson was otherwise subject to a criminal penalty for his conviction. Hanson was convicted under the prior statutory scheme. Section 343.44 formerly distinguished between OAR/OAS convictions that arose solely out of suspensions or revocations for failure to pay a fine or forfeiture, and those that did not. Convictions that arise out of suspensions or revocations for the failure to pay a fine or forfeiture are subject only to civil penalties, whereas other convictions for OAR/OAS, fifth offense, are subject to

criminal penalties. *See* Wis. Stat. § 343.44(2)(e). If the circuit court had concluded that Hanson's conviction had not arisen solely from suspensions or revocations for failure to pay a fine or forfeiture, the court could have sentenced Hanson to up to one year in jail, even if he was not an HTO. *See* Wis. Stat. § 343.44(2)(e)1.

¶ 40. The court of appeals noted in this case that the parties failed to discuss whether Hanson's driving record supported a criminal conviction, even absent consideration of Hanson's HTO status. In their briefs to this court, the parties have referenced whether such an alternative basis for a criminal sentence exists. However, they have each taken seemingly inconsistent positions which do not assist us in deciphering the record and applying the law.

¶ 41. The State advanced in its brief that regardless of the HTO penalty enhancer, Hanson was subject to a criminal penalty for his conviction under Wis. Stat. § 343.44(2)(e)1 because suspensions or revocations in effect at the time of his fifth offense were not imposed solely for the failure to pay a fine or forfeiture. At oral argument, however, the State made no argument regarding this alternative basis for imposing a criminal penalty in the present case, which, if it exists, would carry the day.

¶ 42. The dissent advances that Hanson's failure to reinstate an April 1996 suspension provides a basis for a criminal sentence. That result is directly contrary to the court of appeals decision in *State v. Muniz*, 181 Wis. 2d 928, 512 N.W.2d 252 (Ct. App. 1994). In *Muniz*, the court of appeals addressed the very situation the dissent describes and concluded that the failure to reinstate following a suspension based on grounds other than the failure to pay a fine or forfeiture cannot

serve as the basis to criminalize subsequent OAR/OAS violations. *Id.* at 932–33.

¶ 43. The *Muniz* court rested its decision on the interpretation of the clause that recurs in § 343.44 that states that the civil penalties apply " 'regardless of the person's failure to reinstate his or her operating privilege.' " *Id.* at 930–31 (quoting Wis. Stat. § 343.44(2)(b)2). While the dissent relies on another court of appeals case, *State v. Biljan,* 177 Wis. 2d 14, 501 N.W.2d 820 (Ct. App. 1993), which seems to interpret the same provision to reach a contrary result, the question of law the dissent resolves on its own accord has not been briefed by the parties. Accordingly, we decline to reach out and resolve the question.[10]

¶ 44. Hanson himself puts forth arguments that would suggest that not all of his prior OAR/OAS convictions were based solely upon the failure to pay a fine or forfeiture. Hanson's brief states that his "driving privileges were suspended for point accumulation *and* failure to pay fines."[11] Yet, at the same time Hanson

---

[10] The dissent also relies on *State v. Doyen,* 185 Wis. 2d 635, 518 N.W.2d 321 (Ct. App. 1994), which is not on point. While *Doyen* speaks to the failure to reinstate following a revocation or suspension, it provides no guidance in interpreting the civil penalties provisions of § 343.44, and particularly the clause appearing in § 343.44(2)(e)2 stating that the civil penalty applies "regardless of the person's failure to reinstate his or her operating privilege." Wis. Stat. § 343.44(2)(e)2. The dissent's reliance on *State v. Kniess,* 178 Wis. 2d 451, 504 N.W.2d 122 (Ct. App. 1993), is also misguided. *Kniess* would be controlling only in the event that Hanson's HTO status was valid at the time of his conviction. We have rejected that contention above.

[11] Brief of Defendant-Appellant-Petitioner at 18 (emphasis added).

We also note that Hanson presents an argument regarding the legislature's intent to reserve criminal punishment for seri-

argues that in the absence of the HTO enhancer, no criminal penalty is applicable.

¶ 45. We also note that the circuit court did not delineate whether the suspensions that were in effect on October 31, 1998, arose solely from the failure to pay a fine or forfeiture. Because we are unable to do so, we must remand to the circuit court so that the parties may clarify their positions and the circuit court may make a proper determination as to whether a civil or criminal penalty is appropriate. In doing so, it is to determine whether Hanson's conviction falls under § 343.44(2)(e)2, in which case only a civil forfeiture may be imposed, or whether § 343.44(2)(e)1 applies and allows for the imposition of a criminal sentence.

¶ 46. In closing we note that the difficulties faced in this case are a consequence of the prior statutory scheme, which the 1995 Governor's Task Force described as "overly complex" and a source of confusion "among law enforcement, DAs, attorneys, public defenders and the courts." Governor's Task Force on

---

ous offenses, and argues that the legislature did not intend that he be treated criminally. Hanson's reliance on this legislative intent is misplaced. The legislative intent on which he relies is that of the legislature's reclassification of the offenses of OAR and OAS in 1997 Wis. Act 84. While some of the provisions of that act, including Wis. Stat. § 351.09, were in effect on October 31, 1998, the date of Hanson's fifth offense, the reclassification of OAR and OAS did not take effect until August 1, 2000. Hanson therefore is not subject to the statutory scheme to which the proffered legislative intent applies. Rather, as we have explained, he is subject to the law of OAR and OAS under the prior statutory scheme. Under that statutory scheme he can evade a criminal penalty only if the revocation or suspension that is the basis of the violation was imposed solely due to a failure to pay a fine or forfeiture. Wis. Stat. § 343.44(2)(e)2.

Operating After Revocation and Operating While Intoxicated, *Summary of Proceedings* (Oct. 1995). Fortunately, as a consequence of the legislative overhaul embodied by 1997 Wis. Act 84 and the streamlining and simplification of the law of OAR and OAS, these are problems that our courts will no longer be asked to address.

## IV

¶ 47. In conclusion, we have determined that the imposition of a criminal penalty based solely upon Hanson's HTO status, which was rescinded under Wis. Stat. § 351.09 prior to his conviction, is a sentence in excess of that authorized by law. If there is no additional basis for the imposition of a criminal sentence, the criminal penalty is a sentence in excess of that authorized by law and is invalid under Wis. Stat. § 971.13. Because of the state of the record, however, we are unable to determine whether such additional basis exists. We thus must remand this case to the circuit court for a determination of the appropriate penalty under § 343.44(2)(e). Accordingly, the decision of the court of appeals is reversed and the case is remanded to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 48. N. PATRICK CROOKS, J. *(dissenting)*. I cannot join the majority opinion because it abandons a long-standing rule of Wisconsin law—that a plea of no contest waives all non-jurisdictional challenges. The majority does not provide a valid legal reason for its

failure to apply the waiver rule. The majority opinion also ignores clear information in the record when it reaches the conclusion that a remand is necessary.

¶ 49. It is a well-established principle that a plea of no contest or guilty waives all non-jurisdictional defenses and defects. *State v. Bangert*, 131 Wis. 2d 246, 293, 389 N.W.2d 12 (1986); *State v. Damaske*, 212 Wis. 2d 169, 188, 567 N.W.2d 905 (Ct. App. 1997). Wisconsin courts have recognized the waiver rule for a long time. *See State v. Princess Cinema of Milwaukee, Inc.*, 96 Wis. 2d 646, 651, 292 N.W.2d 807 (1980); *Hawkins v. State*, 26 Wis. 2d 443, 448, 132 N.W.2d 545 (1965).

¶ 50. In this case, Hanson pled no contest to the charge of operating after revocation/suspension (OAR/OAS) (Plea Hr'g at 9), and, therefore, he waived all non-jurisdictional defenses or defects. In his post-conviction motion, Hanson claimed that the circuit court could not impose criminal penalties for the OAR/OAS charge because the Wisconsin Department of Transportation, Division of Motor Vehicles, rescinded his status as a HTO. This challenge is not a jurisdictional one. Consequently, Hanson waived such a defense or defect when he pled no contest to the criminal OAR/OAS charge.

¶ 51. The majority opinion avoids the waiver rule, by holding that Wis. Stat. § 973.13 demands that we address Hanson's challenge to the criminal penalties. Majority op. at ¶ 22. Wisconsin Stat. § 973.13 provides that "[i]n any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings." According to the majority opinion, Hanson's criminal sentence could be void under

§ 973.13, if the rescission of Hanson's status as a HTO prevented the application of the penalty enhancer.

¶ 52. The fatal flaw in the majority opinion is that there is no legal justification for departing from the well-established waiver rule. The majority opinion relies upon *State v. Flowers*, 221 Wis. 2d 20, 586 N.W.2d 175 (Ct. App. 1998) to support its holding. *Flowers* presents an entirely different fact situation, one that makes its holding inapplicable to this case.

¶ 53. In *Flowers*, the defendant claimed that his criminal sentence was void as a matter of law. 221 Wis. 2d at 26. The State charged the defendant, Flowers, with two counts of retail theft, as party to a crime, in violation of Wis. Stat. §§ 943.50(1m) and 939.05, for stealing various items from a food store. *Id.* at 23. In addition, the State charged Flowers as a repeat offender, pursuant to Wis. Stat. § 939.62, because he was previously convicted of felony firearm possession. *Id.* Flowers pled guilty to one count of retail theft as a repeat offender, but Flowers never admitted to the prior felony conviction, nor did the State enter sufficient evidence of such conviction. *Id.* In a post-conviction motion, Flowers claimed that his sentence as a repeater was void as a matter of law, because the State failed to establish his repeater status, and it was undisputed that he did not admit to a prior felony conviction within five years. *Id.* at 24–25. The circuit court denied Flowers' motion and Flowers appealed. *Id.* at 25.

¶ 54. The court of appeals concluded that Wis. Stat. § 973.13 permitted Flowers to challenge his sentence as a repeater, despite the effective procedural bar of Wis. Stat. § 974.06(4), which provides that a defendant must raise all grounds for relief in the original, supplemental, or amended post-conviction motion. *Id.*

at 28. The court of appeals determined that the policy articulated in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), did not prevent Flowers from challenging his criminal sentence. *Id.* at 28.

¶ 55. Here the majority opinion is overlooking a critical limitation on the *Flowers* holding, namely, that "if a defendant is sentenced. . .*and the State has either failed to prove the prior conviction or gain the defendant's admission to such fact*, then § 973.13 becomes applicable." *Id.* (emphasis added).

¶ 56. At the plea hearing in this case, Hanson admitted he had previously been found to be a habitual traffic offender, and to his prior convictions for OAR/OAS. The circuit court judge specifically asked Hanson if he admitted to four prior convictions, and that he had been adjudged a habitual traffic offender. (Plea Hr'g at 9–10). Hanson responded "yes" to these questions. (Plea Hr'g at 10). *Flowers* is, therefore, clearly distinguishable and, as a result, the majority opinion provides no legal justification for departing from the long-standing rule that a plea of no contest waives all non-jurisdictional defenses and defects.

¶ 57. Because the majority opinion concludes that Wis. Stat. § 973.13 permits Hanson to challenge his sentence, the majority opinion does not address Hanson's claim that the circuit court did not have jurisdiction over his case. Majority op. at ¶ 20, n.5. Hanson contends that the circuit court lacked criminal subject matter jurisdiction over his criminal case "because his status as a habitual traffic offender was rescinded, and therefore, the offense with which he was charged was not a crime." (Br. of Def.-Appellant-Pet'r at 17). Therefore, Hanson argues that an exception to the waiver rule applies.

¶ 58. I reject this claim, as the court of appeals did, when it relied on Article VII, Section 8 of the Wisconsin Constitution which confers original jurisdiction on the circuit court for all matters civil and criminal within Wisconsin. In *State v. Aniton*, 183 Wis. 2d 125, 129, 515 N.W.2d 302 (Ct. App. 1994), it was stated that: "[t]he circuit court lacks criminal subject-matter jurisdiction only where the complaint does not charge an offense known to law." *See also State v. Bratrud*, 204 Wis. 2d 445, 450, 555 N.W.2d 663 (Ct. App. 1996)("various facts relevant to a defendant's conviction are admitted when a plea is taken").

¶ 59. It is important to note what the record in this case clearly establishes. Attached to the criminal complaint is a teletype which shows that on April 12, 1996, Hanson was suspended for two months. There is nothing in the record to show that Hanson had been reinstated by the time of this offense on October 31, 1998, nor does Hanson claim that he had been reinstated by that date.

¶ 60. The two-month suspension was a result of convictions for violation of license restriction (VOR), and that suspension served as the basis for three operating after suspension (OAS or OWS) charges that occurred on May 6 and May 29, 1996. These charges resulted in two convictions for operating after suspension (or while suspended) in Waupaca County on August 27, 1996, and in Outagamie County on July 3, 1996.

¶ 61. Wisconsin Stat. § 343.44(2)(b)2 states that if a revocation or suspension which forms the basis of a violation was imposed *solely* due to a failure to pay a fine or forfeiture then a forfeiture (rather than a crime) results. However, here it is clear that at least one of Hanson's suspensions that formed the basis for the

criminal charge of OAR/OAS was predicated *not* on failure to pay a fine or forfeiture, but on a suspension resulting from convictions for violation of license restriction (VOR). Due to that fact, his lack of reinstatement, and his failure to apply for rescission of his HTO status prior to the offense, his violation on October 31, 1998, was a criminal offense and criminal sanctions could be imposed. *See State v. Biljan*, 177 Wis. 2d 14, 21–22, 501 N.W.2d 820 (Ct. App. 1993), and *State v. Doyen*, 185 Wis. 2d 635, 642–43, 518 N.W.2d 321 (Ct. App. 1994).

¶ 62. The majority opinion claims that this conclusion is contrary to the holding in *State v. Muniz*, 181 Wis. 2d 928, 512 N.W.2d 252 (Ct. App. 1994). Majority op. at ¶ 42. In *Muniz*, the defendant, Muniz, appealed the sentence that resulted from a conviction of second offense OAR/OAS, in violation of Wis. Stat. § 343.44(1). 181 Wis. 2d at 930. Muniz argued that the imposition of criminal penalties under Wis. Stat. § 343.44(2)(b)1 was improper because the suspension that formed the basis for the OAR/OAS charge was for failure to pay a forfeiture. *Id.* The court of appeals agreed, stating that "[b]ecause we conclude that the only suspension in effect at the time of the current violation was imposed *solely* for failure to pay a forfeiture, even though Muniz failed to reinstate his operating privileges after another suspension period had expired, Muniz should have been sentenced under § 343.44(2)(b)2." *Id.* (emphasis added).

¶ 63. After *Muniz*, the court of appeals decided the case of *State v. Doyen*, 185 Wis. 2d 635, 518 N.W.2d 321 (Ct. App. 1994). In *Doyen*, a group of five defendants claimed that they were not subject to the mandatory minimum (criminal) penalties under Wis. Stat. § 343.44(2g) for their OAR/OAS violations

because their suspensions for operating a motor vehicle while intoxicated (OWI) had expired by the time each committed the OAR/OAS offense. 185 Wis. 2d at 638. The court of appeals rejected that claim, concluding that the phrase "[n]o person whose operating privilege has been duly revoked or suspended pursuant to the laws of this state shall operate a motor vehicle upon any highway in this state during such suspension or revocation *or thereafter* . . ." in Wis. Stat. § 343.44(1) meant that a suspension or revocation is not limited to the initial court-ordered period of suspension or revocation for the specific offense. *Id.* at 641. With respect to four of the defendants' suspensions for OWI, the phrase "or thereafter" meant that the suspensions continued until they complied with an alcohol assessment order. *Id.* at 642. With respect to the fifth defendant, classified as an HTO, the phrase "or thereafter" meant that the defendant's suspension for OWI continued because the OWI conviction, in conjunction with other convictions, established her as an HTO and led to the revocation of her license. The court also noted that the operating privilege after an OWI conviction is not "automatically reinstated after the lapse of a specific time period." *Id.* at 642–43.

¶ 64. The result in *Doyen* is consistent with the court of appeals decision in *State v. Kniess*, 178 Wis. 2d 451, 504 N.W.2d 122 (Ct. App. 1993). In that case, the defendant, Kniess, claimed that the State could not impose criminal penalties for his sixth offense of OAR/OAS, because the revocation that was the basis for the charge was only for a failure to pay a fine or forfeiture. *State v. Kniess*, 178 Wis. 2d 451, 452, 504 N.W.2d 122 (Ct. App. 1993). The court of appeals reiterated the rule from *Biljan* that criminal penalties are appropriate for an OAR/OAS violation, if the suspen-

sion in effect at the time of the OAR/OAS violation was imposed " 'for other than, or in conjunction with, the defendant's failure to pay a fine or forfeiture.' " *Id.* at 455 (quoting *Biljan,* 177 Wis. 2d at 20). Because the HTO suspension (actually revocation) was imposed on Kniess for reasons other than the failure to pay a fine or forfeiture, the court of appeals concluded that criminal sanctions were appropriate for his OAR/OAS conviction.

¶ 65. I conclude that the reasoning of *Doyen, Kniess,* and *Biljan,* rather than *Muniz,* which is not applicable, controls the result of the present case. A person such as Hanson, suspended as a result of VOR convictions, is not automatically reinstated. At the time of the offense for OAR/OAS, Hanson had neither been reinstated after the suspension resulting from the VOR convictions, nor had he sought rescission of his HTO status. Therefore, Hanson's suspension resulting from the VOR convictions continued during his revocation as an HTO.

¶ 66. Consequently, consistent with *Doyen, Kniess,* and *Biljan,* the civil penalty requirement for a violation of Wis. Stat. § 343.44(1), set forth § 343.44(2)(b)2, is not satisfied in the present case. The suspension that is the basis for Hanson's OAR/OAS violation was not imposed solely for the failure to pay a fine or forfeiture; rather, the suspension resulted from the VOR convictions. In addition, Hanson had not reinstated his driving privileges, nor had he applied for rescission of his HTO status on the date of the offense. Accordingly, criminal sanctions were appropriate for Hanson's OAR/OAS conviction.

¶ 67. While his revocation as an HTO provided yet another basis, when Circuit Judge John P. Hoffmann convicted Hanson on the record of the offense of

OAR/OAS, and when the written Judgment of Conviction and Sentence was entered, no mention was made of Hanson's HTO status. (Plea Hr'g at 11–12 and Record at 10–1).

¶ 68. From a thorough review of the transcript of the plea hearing and of the record, it becomes quite clear, however, that Hanson's conviction and sentence were based on the fact of prior convictions for OAR/OAS within a five-year period, his suspension resulting from the VOR convictions, and his lack of reinstatement. His HTO status on the date of the offense, at a time when he had made no application for rescission, provided an additional factor.

¶ 69. In my opinion, the contention of the majority that a remand is necessary (majority op. at ¶ 43) ignores the record before this court as discussed herein. In addition to what has already been noted, it ignores the concession of Assistant State Public Defender Suzanne C. O'Neill that the charge that Hanson faced was a criminal charge (Plea Hr'g at 11) and further ignores the information provided by the plea questionnaire completed by Hanson and his attorney.

¶ 70. From the face of that document, it is clear that Hanson's HTO status was not expected to play any role at sentencing. Under maximum penalty, there is an entry of "$2500 + 1 Yr Jail." (Record at 8–1). Among other entries initialed with approval by Hanson there were the following: "I am giving up my right to raise any defense I may have to these charges and to have another court review any non-jurisdictional defects in these proceedings. If the judge accepts my plea, I can be found guilty of the criminal charge(s) to which I am pleading." *Id.*

¶ 71. Thorough review of the entire record makes it clear that the conviction of Hanson under Wis. Stat.

§ 343.44(1) made him subject to the criminal penalties provided in Wis. Stat. § 343.44(2)(b)–(e). He received a sentence well within the maximum penalties provided by those provisions. Even if his conviction had been for a second, rather than a fifth, conviction within a five-year period, his sentence would have been a valid one within the maximums provided. *See* Wis. Stat. § 343.44(2)(b)1.

¶ 72. Clearly, Wis. Stat. § 973.13 has no applicability under such circumstances. The circuit court had criminal subject-matter jurisdiction over Hanson, and, in addition, he waived all non-jurisdiction defects and defenses by entry of his plea of no contest. The circuit court did not impose "a maximum penalty in excess of that authorized by law." Wis. Stat. § 973.13.

¶ 73. Contrary to the statement of the majority opinion (majority op. at ¶ 43), the State did argue, both in its brief and during oral argument, that criminal penalties for a violation of Wis. Stat. § 343.44 are appropriate, when the suspension or revocation in effect at the time of the OAR/OAS offense is based on grounds other than the failure to pay a fine or forfeiture, relying on *State v. Kniess*, 178 Wis. 2d 451, 504 N.W.2d 122 (Ct. App. 1993). (State's Br. at 14–15). The State claimed that Hanson admitted that the predicate suspensions to the OAR/OAS charge were not based solely on the failure to pay a fine or forfeiture. *Id.* In addition, the State noted that Hanson was suspended in April, 1996, for VOR. *Id.* at 15. The State claimed that this suspension established that a portion of the predicate suspensions to the OAR/OAS offense were not imposed solely for failure to pay a fine or forfeiture. *Id.* The State argued that, as a result, Hanson was subject to a criminal penalty, regardless of the HTO penalty enhancer. *Id.*

¶ 74. This case was correctly decided based on the record, the Wisconsin Constitution, the case law on subject-matter jurisdiction, and the waiver doctrine. I would, therefore, affirm the decision of the court of appeals, and, therefore the conviction of Hanson for OAR/OAS, since it is clear that his violation on October 31, 1998, was a criminal offense, and, therefore, criminal sanctions could be, and were, properly imposed.

¶ 75. For the foregoing reasons, I respectfully dissent.

¶ 76. I am authorized to state that Justice JON P. WILCOX and Justice DAVID T. PROSSER join this dissent.